IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRUCE THOMAS,

                Plaintiff,

                                        Civil Action No.
                                        9:09-CV-0548 (GLS/DEP)

        vs.

Dr. DOUGLAS, Orleans Correctional Facility;
Dr. T. HOWARD, Marcy Correctional Facility;
and Dr. M. CROOK, Mt. McGregor Correctional
Facility,

                Defendants.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF:

BRUCE THOMAS, *pro se*
P.O. Box 114
Buffalo, New York  14240

FOR DEFENDANTS:

HON. ANDREW M. CUOMO        ADELE TAYLOR-SCOTT ESQ.
Office of Attorney General           Assistant Attorney General
State of New York
The Capitol
Litigation Bureau
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Bruce Thomas, a former New York State prison inmate who is proceeding *pro se* and *in forma pauperis* ("IFP"), has commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants deprived him of his civil rights during the period of his confinement.  In his complaint plaintiff alleges that, in violation of the Eighth Amendment protection against cruel and unusual punishment, he was denied adequate medical treatment at three correctional facilities in which he was housed at the relevant times.  As relief, plaintiff's complaint seeks monetary damages in the amount of $11.5 million.

Plaintiff's claims against two of the named defendants have been *sua sponte* dismissed by the court based upon an initial review of plaintiff's complaint and the accompanying IFP application. The three remaining named defendants have now moved to dismiss plaintiff's claims against them based upon his failure a state a cause of action upon which relief may be granted.  Having carefully considered the allegations of plaintiff's complaint and the attached supporting exhibits, without the benefit of any opposition on the part of the plaintiff, and applied the requisite deferential standard, I have concluded that plaintiff's complaint

2

fails to state a plausible deliberate medical indifference claim against any of the three moving defendants, and therefore recommend that it be dismissed, though with leave to replead.

I.    BACKGROUND[1]

At the time this action was filed plaintiff was a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").[2]  *See generally* Plaintiff's Complaint (Dkt. No. 1).  At the times relevant to his claims plaintiff was designated first to the Mt. McGregor Correctional Facility ("Mt. McGregor"), located in Wilton, New York, followed by the Marcy Correctional Facility ("Marcy"), located in Marcy, New York, and later the Orleans Correctional Facility ("Orleans"), located in Albion, New York, where he was placed into a program to

_____

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  Portions of the background description which follows have been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S. Ct. 1561 (1992); *see also Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

[2]    Plaintiff has since been released from custody, and is living in Buffalo, New York.  *See* Dkt. Entry Dated 8/18/09.

prepare him for re-entry into society.[3]  *See generally* Complaint (Dkt. No. 1) Statement of Claim.

Excerpts from plaintiff's ambulatory health record ("AHR") attached as exhibits to plaintiff's complaint reveal that while at McGregor, Marcy, and Orleans Thomas was examined and treated regularly for various medical ailments, including a lumbar back condition which required prescription medication and the use of a Transcutaneous Electrical Nerve Stimulation ("TENS") unit, and a heart condition for which he underwent surgery in September of 2008 while designated to Mt. McGregor. *See* Complaint (Dkt. No. 1) Attachment pp. 27, 36-37, 46, 60-77.

## II.   PROCEDURAL HISTORY

This action was commenced on April 20, 2009.[4]  Dkt. No. 1.  In his complaint, which was accompanied by portions of his DOCS medical records, Thomas asserted a claim of deliberate medical indifference and

---

[3]     It appears that plaintiff was also incarcerated briefly at Camp Georgetown, another facility operated by the DOCS, during the relevant time period. *See* Complaint (Dkt. No. 1) Attachment Exh. C.  None of plaintiff's claims in this action stem from medical treatment received while at Camp Georgetown.

[4]     Plaintiff brought this action in the United States District Court for the Western District of New York.  Dkt. No. 1.  The action was subsequently transferred to this district pursuant to an order issued by District Judge David G. Larimer on May 8, 2009.  Dkt. No. 3.

named, as defendants, DOCS Commissioner Brian Fischer, DOCS

Deputy Commissioner Lester Wright, M.D., and three DOCS prison

physicians, including Dr. Douglas, employed at Orleans; Dr. Howard, a

prison physician at Marcy; and Dr. M. Crook, who works at Mt. McGregor.

*Id.*

Following transfer of the action to this district and initial review of the

complaint, on October 21, 2009 District Judge Gary L. Sharpe issued a

decision denying plaintiff's IFP application, without prejudice to his right of

renewal upon the submission of additional necessary information

concerning his financial status, dismissing plaintiff's claims against

defendants Fischer and Wright based upon the lack of any facts indicating

their personal involvement in the constitutional violations alleged, and

denying plaintiff's request to return the case to the Western District of New

York.[5]  Dkt. No. 13.

In lieu of answering, the remaining three defendants have moved for

an order dismissing plaintiff's complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure for failure to state a claim upon which

relief may be granted.  Dkt. No. 20.  In their motion, defendants argue that

---

[5]        Following the submission of additional materials, plaintiff's application for
leave to proceed *in forma pauperis* was later granted.  *See* Dkt. No. 15.

plaintiff's complaint and supporting medical records reveal that he was treated regularly and adequately for his various medical conditions, and that his complaint reveals nothing more than his dissatisfaction with the treatment provided, a claim which is not constitutionally actionable. *Id.* Despite passage of the March 29, 2010 deadline for responding, plaintiff has failed to submit any opposition to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

554, 555, 127 S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  *Id.*  While modest in its requirement, that rule

commands that a complaint contain more than mere legal conclusions;

"[w]hile legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations."  *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)

(citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second

Circuit has observed, "[w]hile *Twombly* does not require heightened fact

pleading of specifics, it does require enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator

Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S.

at 570, 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences

in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84

S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

   B.   Eighth Amendment Deliberate Indifference Standard

      Plaintiff's complaint challenges the adequacy of medical treatment provided to him by the three DOCS prison physicians sued.  Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment.  *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976).  That amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards

8

of decency that mark the progress of a maturing society." *Id.; see also*

*Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986) (citing,

*inter alia, Estelle).*  While the Eighth Amendment does not mandate

comfortable prisons, neither does it tolerate inhumane treatment of those

in confinement.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970,

1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct.

2392, 2400 (1981)).  To satisfy their obligations under the Eighth

Amendment, prison officials must "ensure that inmates receive adequate

food, shelter, and medical care, and must take reasonable measures to

guarantee the safety of inmates."  *Farmer*, 511 U.S. at 832, 114 S.Ct. at

1976 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194,

3200 (1984)) (internal quotations omitted).

A claim alleging that prison officials have violated the Eighth

Amendment by inflicting cruel and unusual punishment must satisfy both

objective and subjective requirements.  *Wright v. Goord*, 554 F.3d 255,

268 (2d Cir. 2009); *Price v. Reilly*, No. 07-CV-2634 (JFB/ARL), 2010 WL

889787, at *7-8 (E.D.N.Y. Mar. 8, 2010).[6]  Addressing the objective

element, to prevail in a case such as this a plaintiff must demonstrate a

---

[6]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  With respect to the subjective element, a plaintiff must also demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).  Claims of medical indifference are subject to analysis utilizing this Eighth Amendment paradigm.  *See Salhuddin v. Goord,* 467 F.3d 263, 279-81 (2d Cir. 2006).

### 1.    Objective Requirement

Analysis of the objective, "sufficiently serious", requirement of an Eighth Amendment medical indifference claim begins with an inquiry into "whether the prisoner was actually deprived of adequate medical care . . .", and centers upon whether prison officials acted reasonably in treating the plaintiff.  *Salahuddin*, 467 F.3d at 279.  A second prong of the objective test addresses whether the inadequacy in medical treatment was sufficiently serious.  *Id*. at 280.  If there is a complete failure to provide treatment, the court must look to the seriousness of the inmate's medical condition.  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir.

2003).  If, on the other hand, the complaint alleges that treatment was provided but was inadequate, the seriousness inquiry is more narrowly confined to that alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition.  *Salahuddin*, 467 F.3d at 280.  "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in treatment. . . [the focus of] the inquiry is on the challenged delay or interruption, rather that the prisoner's underlying medical condition alone."  *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations omitted).  In other words, at the heart of the relevant inquiry is the seriousness of the medical need, and whether from an objective viewpoint the temporary deprivation was sufficiently harmful to establish a constitutional violation.  *Smith*, 316 F.3d at 186.  Of course, "when medical treatment is denied for a prolonged period of time, or when a degenerative medical condition is neglected over sufficient time, the alleged deprivation of care can no longer be characterized as 'delayed treatment', but may properly be viewed as a 'refusal' to provide medical treatment."  *Id.* at 186, n.10 (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)).

Since medical conditions vary in severity, a decision to leave a

condition untreated may or may not raise constitutional concerns,

depending on the circumstances.  *Harrison,* 219 F.3d at 136-37 (quoting,

*inter alia, Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)).

Relevant factors informing this determination include whether the plaintiff

suffers from an injury or condition that a "'reasonable doctor or patient

would find important and worthy of comment or treatment'", a condition

that "'significantly affects'" a prisoner's daily activities, or "'the existence of

chronic and substantial pain.'" *Chance,* 143 F.3d at 702 (citation omitted);

*Lafave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at *3

(N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

### 2.    Subjective Element

The second, subjective, requirement for establishing an Eighth

Amendment medical indifference claim mandates a showing of a

sufficiently culpable state of mind, or deliberate indifference, on the part of

one or more of the defendants.  *Salahuddin*, 467 F.3d at 280 (citing

*Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 2325 (1991).

Deliberate indifference, in a constitutional sense, exists if an official

"knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach v. Dufrain,* 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same).  Deliberate indifference is a mental state equivalent to subjective recklessness as the term is used in criminal law. *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839-40, 114 S. Ct. 1970).,

Mere negligence on the part of a physician or other prison medical official in treating or failing to treat a prisoner's medical condition, on the other hand, does not implicate the Eighth Amendment and is not properly the subject of a section1983 action.  *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 292; *Chance,* 143 F.3d at 703.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.  Thus, for example, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference.  *Harrison,* 219 F.3d at 139.   If prison officials consciously

delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," however, such conduct is actionable as deliberate indifference.  *Harrison,* 219 F.3d at 138;  *Kearsey v. Williams,* No. 99 Civ 8646, 2005 WL 2125874, at *5  (S.D.N.Y. Sep. 1, 2005).

C.    Plausibility Of Plaintiff's Medical Indifference Claim

Plaintiff's medical records reveal that prior to being incarcerated he underwent three lumbar disc operations and had a TENS unit implanted in his back to assist in managing any residual pain.  *See* Complaint (Dkt. No. 1) Attachment pp. 27, 64.  In addition, plaintiff underwent heart surgery, in September of 2008, while incarcerated at Mt. McGregor, during which a stint was implanted.[7]  *Id.* at pp. 71-76.  Conspicuously lacking in either his complaint or the supporting documents are any factual allegations to support his claim that defendants were deliberately indifferent to his medical condition.  Instead, plaintiff's deliberate indifference claim is set forth in wholly conclusory terms, which merely allege, for example, that he was "continuously denied proper treatment." *See, e.g.,* Complaint (Dkt. No. 1) at p. 9.  Such conclusory allegations do not suffice without

---

[7]    Plaintiff does not appear to complain regarding the treatment received for his heart condition.

14

supporting facts to establish a plausible medical indifference claim

capable of withstanding a dismissal motion. *Collins v. Artus*, No. 9:08-CV-

470, 2009 WL 606176, at * 6-7 (N.D.N.Y. Mar. 9, 2009) (McAvoy, S.J. &

Peebles, M.J.).

Turning to the specific allegations advanced against the three

named defendants, I conclude that they similarly fail to satisfy

requirements of *Iqbal* and *Twombly* to demonstrate the existence of a

plausible medical indifference claim.

> 1.   Dr. M. Crook

Dr. M. Crook was employed at the relevant times as a prison

physician at Mt. McGregor.  While it is somewhat unclear, it appears that

plaintiff's quarrel with Dr. Crook is limited to his assignment of Thomas to

an upper bunk, as well as a requirement that plaintiff engage in work

activities despite his medical conditions.  *See* Complaint (Dkt. No. 1)

Statement of Claims p. 9.

Plaintiff's medical records reveal that he entered Mt. McGregor on or

about July 24, 2007.  *See* Complaint (Dkt. No. 1) Attachment p. 64.

Excerpts from plaintiff's AHR reveal that he was seen by Dr. Crook the

day after his arrival at the facility and reported that he was doing well and

was using his TENS Unit "infrequently".  Complaint (Dkt. No.1) Attachment

p. 66.  Plaintiff was provided with batteries for the device on August 20,

2007, and again reported doing well with the use of his TENS unit on

September 25, 2007, and later on February 1, 2008.  *Id.* at pp. 67-68.

Thomas' medical records reveal only one involvement on the part of

Dr. Crook in the plaintiff's treatment while at Mt. McGregor and fail to

support his claim of ongoing substantial pain as a result of his back

surgery.  Neither plaintiff's complaint, which is comprised wholly of

conclusory allegations, nor the attached medical records demonstrate the

existence of a plausible deliberate indifference claim against Dr. Crook.

Because plaintiff's naked assertion that Dr. Crook violated his Eighth

Amendment rights by refusing to provide him with a lower bunk permit and

excuse him from work do not establish the existence of a plausible

medical indifference claim, I recommend dismissal of the claims against

defendant Crook.  *See Moolenaar v. Champagne*, No. 9:03-CV-1464,

2006 WL 2795339, at * 7 (N.D.N.Y. Sept. 6, 2006) (Kahn, D.J. & Peebles,

M.J.).

### 2.   Dr. T. Howard

Defendant Howard, at the relevant times, was a DOCS physician

16

stationed at Marcy.  Plaintiff's records reveal that he was transferred into

Marcy on October 29, 2008.  Complaint (Dkt. No. 1) Attachment p. 46.

The medical records associated with Thomas' admission into Marcy note

plaintiff's surgery on September 30, 2008 for the insertion of a

stint/cardiac catheter and that he suffers from chronic back pain requiring

the use of a TENS unit, for which he required batteries and a lower bunk

permit.  *Id.*

Plaintiff's medical records reveal that upon his arrival at Marcy he

was seen by Dr. Howard on November 7, 2008, who reviewed his medical

circumstances and assessed his needs, and was provided with both a

bottom bunk pass and a permit to carry his TENS unit, and he was

scheduled for a follow-up visit with a cardiologist.  *Id.* at p. 76; *see also id.*

at p. 48.  Those records also reflect that plaintiff was seen again on

November 9, 2008 at medical call out for a teaching session, and again on

November 11, 2008 when he requested a new battery for his TENS unit.

Complaint (Dkt. No. 1) Attachment at p.47.

On November 13, 2008, Thomas was seen at the clinic; on that

occasion he reported experiencing considerable pain in his lower back

and requested pain medication, which was provided.  *Id.* at p. 47.

17

Thomas again was seen by medical personnel on November 14, 2008, at which time he was provided with a permit for use of his TENS unit.  *Id*. at p. 48.  Plaintiff was seen for a third time on November 21, 2008, once again complaining of lower back pain, with numbness going down his right leg to his knee; he was seen by Dr. Howard three days later, on November 24, 2008, and provided with a prescription for a pain reliever. Complaint (Dkt. No. 1) Attachment p. 49.  Plaintiff made additional visits to the clinic on November 28 and December 1, 2008 regarding his medications and was provided with a refill prescription for Naproxyn on December 5, 2008.  *Id.* at pp. 51-52.

Once again, nothing within plaintiff's medical records from Marcy, which are presumably offered to supplement the otherwise bald and conclusory allegations of his complaint, reveal that Dr. Howard was aware of a serious medical need on the part of the plaintiff but was deliberately indifferent to that need, and the claims against him also should be dismissed.

### 3.    Dr. Douglas

Plaintiff was transferred into Orleans on January 23, 2009 and apparently remained there until his release from prison a few months later.

18

Complaint (Dkt. No. 1) Attachment pp. 15-24.  Plaintiff alleges that upon

his arrival at Orleans he notified Dr. Douglas that he needed his TENS

unit reprogrammed, but was told that due to the short time remaining

before his release an outside consultation could not be arranged.

Complaint (Dkt. No. 1) at pp. 7-8.  Plaintiff bases his assertion that the

TENS unit needed reprogramming on a letter dated February 6, 2007,

from Dr. Robert Plunkett indicating that Thomas had an appointment

scheduled for April 12, 2007 at the Buffalo General Hospital.  *See*

Complaint (Dkt. No. 1) Attachment p. 26.  There is no indication whether

the letter, which predated plaintiff's arrival at Orleans by nearly two years,

was ever provided to DOCS officials, nor does plaintiff's AHR make any

reference to an earlier request for such a referral.  *Id.*  Moreover, the letter

does not state the purpose of the scheduled visit and does not suggest

that it was to reprogram the TENS unit.  *Id.*

While at Orleans, plaintiff was issued permits for his TENS unit as

well as for use of a bottom bunk.  Complaint (Dkt. No. 1) Attachment

pp.15-16.  Plaintiff was seen by medical personnel on January 29, 2009,

though the entry associated with that visit is largely illegible, and on the

following day was admitted to the facility's emergency room with a nose

bleed, which apparently was packed by Dr. Lewis, who is not a defendant in this case, and was provided with a thirty-day prescription for Ultram, a pain reliever.[8]  *Id.* at pp. 19-20.  Plaintiff again was seen on February 12, 2009 for a hypertension consultation, at which time he reported having "no complaints" and that he was "active in sports".  Complaint (Dkt. No. 1) Attachment p. 20.  On February 13, 2009, and again on February 27, 2009, plaintiff went to the medical unit requesting more Ultram.  *Id.* at pp. 20-21.  The last entries regarding medical treatment at Orleans reference visits on March 11, 2009, during which plaintiff reported suffering from discomfort, and again on March 12, 2009, when he stated that he suffered from chronic pain and requested and was given a prescription for Ultram.  *Id.* at p. 22.

As with defendants Howard and Crook, the allegations of plaintiff's complaint, as supplemented by the relevant medical records associated with his incarceration at Orleans, fail to reveal that defendant Dr. Douglas was either aware of any serious medical need on the part of the plaintiff, or that he failed to address such a need.  Plaintiff's complaint therefore

---

[8]     Ultram is a trademark preparation of tramadol hydrochloride, an opiod analgesic used for treatment of moderate to moderately sever pain following surgical procedures.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1977, 2027 (31st Ed. 2007).

fails to assert a plausible medical indifference claim as against Dr. Douglas, and this portion of defendants' motion to dismiss should also be granted.

### D.   Leave to Replead

In light of my recommendation that plaintiff's complaint be dismissed as legally insufficient I will consider whether, in view of his *pro se* status, plaintiff should be permitted to file an amended complaint in an effort to cure the perceived deficiencies.

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

In essence, plaintiff's complaint alleges that his medical needs were not met by the defendants, at least not to his complete satisfaction. Because plaintiff could potentially allege additional facts to satisfy his

obligation to plead a plausible Eighth Amendment violation claim, I recommend that he be afforded the opportunity to file an amended complaint.

Plaintiff should be reminded, however, that any subsequent amended complaint submitted to the court should be in proper form, including separately numbered paragraphs each limited, to the extent practicable, to setting forth a single, discrete set of circumstances.  *See* Fed. R. Civ. P. 10(b); *see also Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, C.J.) ("complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.") (citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (other citations omitted)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 U.S. Dist. LEXIS 7136, at *24-25 (N.D.N.Y. May 22, 1995) (Pooler, D.J.) (citation omitted).  Any such amended complaint, which shall supersede and replace in its entirety the previous complaint filed by plaintiff, must contain a caption that clearly identifies, by name, each individual or entity that plaintiff is suing in the present lawsuit, and must bear the case number assigned to this action.

*See Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); Fed. R. Civ. P. 10(a).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's Eighth Amendment cause of action, alleging deliberate medical indifference based upon treatment received by him from medical personnel at three separate prison facilities, is stated in wholly conclusory terms, with no factual allegations to support the claim.  While plaintiff attempts to augment those skeletal allegations with records of his medical treatment at those facilities, they in fact fail to substantiate that the three named defendants were aware of but deliberately indifferent to any serious medical need on plaintiff's part.  Rather, those records and plaintiff's complaint, at best, disclose his dissatisfaction with the treatment that he received from those doctors and others at the facilities.   In light of plaintiff's failure to plead facts demonstrating the existence of a plausible deliberate medical indifference claim against any of the three defendants remaining in this case, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 20) be GRANTED, and that plaintiff's complaint be dismissed as against the

remaining defendants, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:       August 12, 2010
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge



697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

**C**

United States District Court,
E.D. New York.
Anthony PRICE, Plaintiff,
v.
Sheriff Edward REILLY, Kim Edwards, RN III, Perry
Intal, Mary Sullivan, RN, Dr. Benjamin Okonta, MD,
and Nassau University Medical Center, Defendants.
**No. 07-CV-2634 (JFB)(ARL).**

March 8, 2010.

**Background:** Pro se inmate, who suffered from end stage
renal disease requiring dialysis, filed § 1983 action against
sheriff, nurse practitioner, physician, and medical center,
alleging violations of the Eighth Amendment for
defendants' failure to provide adequate medical care.
Defendants moved for summary judgment.

**Holdings:** The District Court, Joseph F. Bianco, J., held
that:

(1) there was no evidence that administrative remedy was
available to inmate;

(2) prison medical staff's modification of inmate's
medication dosage did not constitute deliberate
indifference to his medical needs;

(3) prison's failure to provide food with inmate's
medication was not sufficiently serious to satisfy objective
prong of test for deliberate indifference to serious medical
needs;

(4) medical staff did not act with culpable intent to
consciously disregard inmate's serious medical needs;

(5) genuine issue of material fact as to whether prison
medical staff was aware of, and consciously disregarded
inmate's request for a kidney transplant test precluded
summary judgment;

(6) genuine issue of material fact as to whether inmate's
shoulder pain was a serious medical condition precluded
summary judgment;

(7) sheriff was not liable under § 1983; but

(8) genuine issues of material fact precluded summary

judgment on § 1983 liability of registered nurse and
doctor.

Motion granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure 170A** 2547.1

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2547 Hearing and Determination
                    170Ak2547.1 k. In general. Most Cited
Cases
Generally, plaintiffs' failure to respond or contest facts set
forth by defendants in their statement of facts, submitted
in support of summary judgment, constitutes admission of
those facts, and facts are accepted as undisputed under
local rule. U.S.Dist.Ct.Rules S.D.N.Y., Civil Rule 56.1.

**[2] Federal Civil Procedure 170A** 25

170A Federal Civil Procedure
    170AI In General
        170AI(B) Rules of Court in General
            170AI(B)1 In General
                170Ak25 k. Local rules of District Courts.
Most Cited Cases
District court has broad discretion to determine whether to
overlook a party's failure to comply with local court rules.

**[3] Federal Civil Procedure 170A** 2547.1

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2547 Hearing and Determination
                    170Ak2547.1 k. In general. Most Cited

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

Cases

District court, when analyzing motion for summary judgment by sheriff and medical personnel in inmate's pro se action alleging cruel and unusual punishment, would treat as admitted only those facts in defendants' statement of facts that were supported by admissible evidence and not controverted by other admissible evidence in the record, given that inmate was acting pro se, he failed to file and serve a response to defendant's statement, but he had identified arguments and factual assertions in statement with which he disagreed. U.S.C.A. Const.Amend. 8; U.S.Dist.Ct.Rules S.D.N.Y., Civil Rule 56.1.

**[4] Federal Civil Procedure 170A ☞ 657.5(1)**

170A Federal Civil Procedure
　　170AVII Pleadings and Motions
　　　　170AVII(A) Pleadings in General
　　　　　　170Ak654 Construction
　　　　　　　　170Ak657.5 Pro Se or Lay Pleadings
　　　　　　　　　　170Ak657.5(1) k. In general. Most Cited Cases
Court must construe pro se complaint broadly, and interpret it to raise the strongest arguments that it suggests.

**[5] Attorney and Client 45 ☞ 62**

45 Attorney and Client
　　45II Retainer and Authority
　　　　45k62 k. Rights of litigants to act in person or by attorney. Most Cited Cases

**Federal Civil Procedure 170A ☞ 657.5(1)**

170A Federal Civil Procedure
　　170AVII Pleadings and Motions
　　　　170AVII(A) Pleadings in General
　　　　　　170Ak654 Construction
　　　　　　　　170Ak657.5 Pro Se or Lay Pleadings
　　　　　　　　　　170Ak657.5(1) k. In general. Most Cited Cases

**Federal Civil Procedure 170A ☞ 2546**

170A Federal Civil Procedure
　　170AXVII Judgment
　　　　170AXVII(C) Summary Judgment
　　　　　　170AXVII(C)3 Proceedings
　　　　　　　　170Ak2542 Evidence
　　　　　　　　　　170Ak2546 k. Weight and sufficiency.
Most Cited Cases
Though pro se litigant's pleadings and other submissions are afforded wide latitude, pro se party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat motion for summary judgment.

**[6] Civil Rights 78 ☞ 1304**

78 Civil Rights
　　78III Federal Remedies in General
　　　　78k1304 k. Nature and elements of civil actions.
Most Cited Cases
To prevail on a claim under § 1983, a plaintiff must show: (1) deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C.A. § 1983.

**[7] Prisons 310 ☞ 317**

310 Prisons
　　310II Prisoners and Inmates
　　　　310II(H) Proceedings
　　　　　　310k316 Exhaustion of Other Remedies
　　　　　　　　310k317 k. In general. Most Cited Cases
In order to determine if prisoner exhausted his administrative remedies prior to commencement of lawsuit, as required by PLRA, court must first establish from a legally sufficient source that an administrative remedy is applicable, and that the particular complaint does not fall within an exception. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

**[8] Prisons 310 ☞ 313**

310 Prisons

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

310II Prisoners and Inmates
310II(H) Proceedings
310k307 Actions and Litigation
310k313 k. Trial. Most Cited Cases
Whether administrative remedy was available to prisoner in a particular prison or prison system, and whether such remedy was applicable to grievance underlying prisoner's suit, for purpose of PLRA's exhaustion requirement, are not questions of fact; rather, such issues either are, or inevitably contain, questions of law. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

[9] Civil Rights 78 ☜    1319

78 Civil Rights
78III Federal Remedies in General
78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
78k1319 k. Criminal law enforcement; prisons. Most Cited Cases
Sheriff and prison medical staff provided no evidence that an administrative remedy was available to inmate who suffered from end state renal disease, and who sought, but did not receive, medical testing to determine if he was a candidate for kidney transplant, and thus inmate's § 1983 action alleging violations of Eighth Amendment would not be dismissed for his failure to exhaust administrative remedies under PLRA; defendants failed to establish procedural framework for grievance resolution at the prison or the availability of any administrative remedies for prisoner's situation. U.S.C.A. Const.Amend. 8; Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

[10] Sentencing and Punishment 350H ☜    1533

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1533 k. Deliberate indifference in general. Most Cited Cases
Test for determining whether prison official's actions or omissions rise to level of "deliberate indifference" in violation of the Eighth Amendment, as will allow recovery by prisoner in federal civil rights action, is twofold: first, prisoner must demonstrate that he is incarcerated under

conditions posing substantial risk of serious harm, and second, prisoner must demonstrate that defendant prison officials possessed sufficient culpable intent. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

[11] Sentencing and Punishment 350H ☜    1533

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1533 k. Deliberate indifference in general. Most Cited Cases
Second prong of test for determining whether prison officials acted with deliberate indifference to rights of prisoners in violation of the Eighth Amendment, that of "culpable intent," in turn involves two-tier inquiry; specifically, prison official has sufficient culpable intent if he has knowledge that inmate faces substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate harm. U.S.C.A. Const.Amend. 8.

[12] Sentencing and Punishment 350H ☜    1546

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1546 k. Medical care and treatment. Most Cited Cases
Mere fact that an inmate's underlying disease is a "serious medical condition" does not mean that prison staff's allegedly incorrect treatment of that condition automatically poses an "objectively serious health risk," in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8.

[13] Prisons 310 ☜    192

310 Prisons
310II Prisoners and Inmates
310II(D) Health and Medical Care
310k191 Particular Conditions and Treatments
310k192 k. In general. Most Cited Cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

**Sentencing and Punishment 350H** &#x260D;   1546

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
         350Hk1546 k. Medical care and treatment. Most
Cited Cases
Even though inmate's end stage renal disease requiring
dialysis was serious medical condition, prison medical
staff did not act with deliberate indifference to inmate's
medical needs in violation of his Eighth Amendment rights
by modifying his medication dosage, since reduction in
medication levels posed no objectively serious health risk
to inmate; only injury inmate suffered was an increase in
phosphorous levels, which was correctable, and a slight
rash. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[14] Prisons 310** &#x260D;   192

310 Prisons
   310II Prisoners and Inmates
      310II(D) Health and Medical Care
         310k191 Particular Conditions and Treatments
           310k192 k. In general. Most Cited Cases

**Sentencing and Punishment 350H** &#x260D;   1546

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
         350Hk1546 k. Medical care and treatment. Most
Cited Cases
Even though inmate's prescriptions indicated that his
medications for renal disease were to be taken with meals,
prison officials' failure to provide food with the
medication was not sufficiently serious to satisfy objective
prong of test for deliberate indifference to inmate's serious
medical needs, in violation of Eighth Amendment; inmate
did not suffer any harm from taking medicine without
food. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[15] Sentencing and Punishment 350H** &#x260D;   1546

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
         350Hk1546 k. Medical care and treatment. Most
Cited Cases
An inmate's mere disagreement with prison officials'
prescribed medication dosage is insufficient as a matter of
law to establish officials' "deliberate indifference" to his
medical needs, in violation of the Eighth Amendment.
U.S.C.A. Const.Amend. 8.

**[16] Prisons 310** &#x260D;   192

310 Prisons
   310II Prisoners and Inmates
      310II(D) Health and Medical Care
         310k191 Particular Conditions and Treatments
           310k192 k. In general. Most Cited Cases

**Sentencing and Punishment 350H** &#x260D;   1546

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
         350Hk1546 k. Medical care and treatment. Most
Cited Cases
Even though inmate disagreed with medical treatment he
received at prison, medical staff did not act with culpable
intent to consciously disregard inmate's serious medical
needs, in violation of his Eighth Amendment rights, by
adjusting the dosage levels of his prescription medication
for renal disease; dosage inmate received adequately
treated his condition, he suffered no injury from
modification of dosage other than increased phosphorous
levels, and officials changed dosage to correct those
levels. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[17] Federal Civil Procedure 170A** &#x260D;   2491.5

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
           170Ak2491.5 k. Civil rights cases in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

general. Most Cited Cases
Genuine issue of material fact as to whether prison medical staff was aware of, and consciously disregarded inmate's request for a kidney transplant test, precluded summary judgment in inmate's § 1983 action alleging officials' deliberate indifference to his medical needs, in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[18]** Sentencing and Punishment 350H ⚷ 1546

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
         350Hk1546 k. Medical care and treatment. Most Cited Cases
An inmate's chronic pain can constitute a "serious medical condition" for purposes of claim of deliberate indifference to a serious medical need under the Eighth Amendment. U.S.C.A. Const.Amend. 8;.

**[19]** Federal Civil Procedure 170A ⚷ 2491.5

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
            170Ak2491.5 k. Civil rights cases in general. Most Cited Cases
Genuine issue of material fact as to whether inmate's shoulder pain was a serious medical condition, and whether prison medical staff acted with deliberate indifference by failing to prescribe pain medication or take x-rays, despite inmate's ongoing complaints, precluded summary judgment, in inmate's § 1983 Eighth Amendment claims against medical staff. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[20]** Civil Rights 78 ⚷ 1355

78 Civil Rights
   78III Federal Remedies in General
      78k1353 Liability of Public Officials
         78k1355 k. Vicarious liability and respondeat

superior in general; supervisory liability in general. Most Cited Cases
Supervisor liability in § 1983 action can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring. 42 U.S.C.A. § 1983.

**[21]** Civil Rights 78 ⚷ 1358

78 Civil Rights
   78III Federal Remedies in General
      78k1353 Liability of Public Officials
         78k1358 k. Criminal law enforcement; prisons. Most Cited Cases
Sheriff was not liable under § 1983 for alleged deliberate indifference to medical needs of inmate related to inmate's end stage renal disease or chronic shoulder pain; there was no showing that sheriff was personally involved in denying medical treatment to inmate, or that there was a custom or policy at prison of allowing alleged constitutional violations. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[22]** Federal Civil Procedure 170A ⚷ 2491.5

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
            170Ak2491.5 k. Civil rights cases in general. Most Cited Cases
Genuine issue of material fact as to whether registered nurse on prison medical staff was personally involved in prison's alleged failure to arrange for inmate's kidney transplant test precluded summary judgment in inmate's § 1983 action alleging officials' deliberate indifference to his medical needs, in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

**[23]** Civil Rights 78 ⚷    1358

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1358 k. Criminal law enforcement; prisons.
Most Cited Cases
If prison doctor denies medical treatment to an inmate, that doctor is "personally involved" in alleged constitutional violation for purposes of § 1983 liability. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[24]** Federal Civil Procedure 170A ⚷    2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil rights cases in general. Most Cited Cases
Genuine issue of material fact as to whether doctor denied medical treatment to inmate suffering from end stage renal disease, precluded summary judgment in inmate's § 1983 action alleging prison officials' deliberate indifference to his medical needs, in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.
*347 Anthony Price, pro se.

Edward J. Troy, Law Office of Edward J. Troy, Greenlawn, NY, for the Defendants.

**\*348** MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Anthony Price (hereinafter "Price" or "plaintiff") alleges, pursuant to 42 U.S.C. § 1983, that Sheriff Edward Reilly, Kim Edwards, RN, Perry Intal, Mary Sullivan, RN, Dr. Benjamin Okonta, and Nassau University Medical Center (hereinafter "defendants") violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs while plaintiff was incarcerated at the Nassau County

Correctional Center (hereinafter "NCCC"). Specifically, plaintiff alleges that defendants: (1) prescribed an incorrect dosage of medication for his renal disease; (2) failed to get him tested for a kidney transplant list; and (3) failed to adequately treat him for shoulder pain. Defendants have moved for summary judgment on all of plaintiffs' claims. For the reasons set forth below, defendants' motion is granted in part and denied in part. Specifically, defendants' motion is granted with respect to plaintiff's claim regarding the dosage of his prescription medication and with respect to all of plaintiff's claims against Sheriff Reilly. Defendants' motion is denied in all other respects.

**I. FACTS**

**[1][2][3]** The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the defendants' Rule 56.1 statement of facts.FN1 They are not findings of fact by the Court, but rather are assumed to be true for the purposes of deciding this motion. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party-here, the plaintiff. *See Capobianco v. City of New York,* 422 F.3d 47, 50 n. 1 (2d Cir.2005). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

FN1. The Court notes that plaintiff failed to file and serve a response to defendants' Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see*

*also* *Giliani v. GNOC Corp.,* No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In his opposition papers, plaintiff identifies defendants' arguments and factual assertions with which he disagrees. In the exercise of its broad discretion, and given plaintiff's *pro se* status, the Court will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See* *Jessamy,* 292 F.Supp.2d at 504-05. Furthermore, the Court has carefully reviewed all of the parties' submissions, including plaintiff's deposition, to determine if plaintiff has any evidence to support his claims.

A. Arrival at NCCC and Medication

Plaintiff was incarcerated in the Nassau County Correctional Center from January 7, 2007 to December 11, 2007. (Price Dep. at 6, 35.) Plaintiff has end stage renal disease and has been on dialysis since 2004 related to kidney failure. (*Id.* at 10; Defs.' 56.1 ¶ 2.) Plaintiff takes two daily medications, Renagel and PhosLo, for this condition. (Price Dep. at 10.) Before arriving***349** at the NCCC,[FN2] plaintiff was taking two 800 milligram pills of Renagel three times a day and two 667 milligram pills of PhosLo three times a day. (*Id.* at 12-13.)

FN2. Plaintiff was incarcerated at the Elmira correctional facility in 2005 and 2006. (Price Dep. at 7-8.)

When plaintiff arrived at the NCCC, he was interviewed by Perry Intal, a nurse practitioner in the medical intake department. (*Id.* at 21-22.) Plaintiff told Intal about his medical history, including that he was a dialysis patient and that he took medications. (*Id.* at 22.) Plaintiff was given a prescription for one 800 milligram pill of Renagel two times a day and one 667 milligram pill of PhosLo two times a day. (*Id.* at 23-24.) Two or three weeks later, plaintiff went to dialysis treatment and a blood test revealed high phosphorous levels. (*Id.* at 25-26.) As a result, plaintiff was given an increased dosage of medication. (*Id.* at 25-27.) Thereafter, plaintiff's phosphorous levels decreased and about one month later (*id.* at 30-31), his dosage was decreased to one 800 milligram pill of Renagel three times a day and two 667 milligram pills of PhosLo three times a day. (*Id.* at 31-33.) This was the dosage plaintiff received for the rest of his incarceration at the NCCC.[FN3] (*Id.* at 32-33.) Plaintiff believed that the dosage he was receiving was "wrong" and that it was "hurting" him. (*Id.* at 59-60.) However, the more plaintiff complained about the dosage hurting him, "the more it seemed like the people got aggravated." (*Id.* at 60.) In addition, plaintiff's prescriptions for Renagel and PhosLo indicate that the medications were to be taken with meals. (*See* Defs.' Ex. E.) Plaintiff alleges, however, that the medications were sometimes given to him without food or at times that interfered with his meals. (Price Dep. at 23, 60.)

FN3. Plaintiff testified that, at the time of his deposition, he was receiving two 800 milligram pills of Renagel three times a day and two 667 milligram pills of PhosLo three times a day at the Fishkill correctional facility. (Price Dep. at 11-12.)

Besides receiving medication, plaintiff also received dialysis treatment three times a week at the Nassau University Medical Center. (*Id.* at 30.) On some occasions, plaintiff refused dialysis treatment because he "was feeling good" and "wanted to take a break" from treatment. (*Id.* at 56.) Plaintiff's regular medical treatment at the hospital also included a blood test every 30 days. (*Id.* at 27-28, 30.)

B. Kidney Transplant Request

In February or March 2007, plaintiff spoke with a social worker named "Susan" about getting tested for a kidney transplant. (*Id.* at 76.) A test was required before an inmate could be placed on a waiting list for kidney transplants. (*Id.* at 80-81.) Only two hospitals in the area dealt with such matters: Stony Brook and a hospital in Westchester County. (*Id.* at 75-76.) Susan tried to contact Dr. Benjamin Okonta (hereinafter "Okonta") at Nassau University Medical Center in or about February or March

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

2007 (*id.* at 76-77), but Susan told plaintiff that Okonta did not get back to her.[FN4] (*Id.* at 65-66, 74-78.) Susan also submitted a letter to Okonta in July 2007, stating: "As per our conversation on 7/27/07, I am re-submitting for your review my request [for] your medical services on behalf of our renal dialysis pt., Anthony Price." (*Id.* at 77-78; Defs.' Ex. K.) Plaintiff never received a response from Okonta. (Price Dep. at 82.)

> **FN4.** Plaintiff never interacted with Okonta except through Susan, the social worker. (Price Dep. at 73-74.)

Susan also submitted a letter to Nurse Mary Sullivan (hereinafter "Sullivan"), the **\*350** day supervisor at the NCCC medical center, stating: "As per our telephone conversation, I am submitting in writing Anthony Price's request for referral and evaluation to a kidney transplant center ... Stonybrook Univ. Medical Ctr." (Def.'s Ex. K.) At some point in time, plaintiff was called down to the NCCC medical center and was told by Sullivan that defendants knew about plaintiff's request to get on the kidney transplant list but that they had "other priorities right now." (Price Dep. at 70.) Plaintiff believed Sullivan was referring to his other health issues. (*Id.* at 70.) Plaintiff did not ask when he would be tested for the kidney transplant list. (*Id.* at 71.)

On September 25, 2007, plaintiff filed a formal grievance regarding his request to be tested for the kidney transplant list.[FN5] (*Id.* at 85.) Plaintiff stated on his grievance form that he had "been waiting to take the test I need to take to get on the kidney transplant list" and that his social worker had told him that she had forwarded the paperwork to the jail, but could not get a response. (Defs.' Ex. F.) Plaintiff requested that he be "given the test to see if I'm a candidate for possibly a kidney transplant." (*Id.*) By interdepartmental memorandum dated September 27, 2007, the Inmate Grievance Coordinator informed plaintiff that the medical grievance "is being discussed with and turned over to the Health Services Administrator. The medical unit will evaluate you. A Grievance Unit Investigator will contact you at a later date to conduct an evaluation of your status and to closeout the paperwork." (*Id.*) In another memo dated October 5, 2007, defendant Kim Edwards,[FN6] informed plaintiff:

> **FN5.** This was the only formal medical grievance filed by plaintiff. (Price Dep. at 85.)

> **FN6.** Edwards never wrote medical orders for plaintiff or examined plaintiff. (Price Dep. at 61.) Plaintiff had no interaction with Edwards except her written response to plaintiff's grievance. (*Id.* at 67.)

The social worker can only inform you of treatment options that are available for your medical problem. If you are in need of a "test", documentation must be provided by the attending physician that is responsible for your renal treatment.

(*Id.*) Plaintiff interpreted this response from Edwards to mean that the matter was now in the hands of the medical department, and so he did not further proceed with the grievance and "did not feel it was necessary." (Pl.'s Opp. at 3.)[FN7] Therefore, plaintiff "signed off on the grievance," saying that he had "read it and accepted it." (Price Dep. at 88.)

> **FN7.** Although plaintiff does not offer this explanation in his deposition, the Court construes the *pro se* plaintiff's sworn "verified rebuttal" to defendants' motion for summary judgment as an evidentiary submission. *See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004) ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment."); *see also Hailey v. N.Y. City Transit Auth.,* 136 Fed.Appx. 406, 407-08 (2d Cir.2005) ("The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims.").

Plaintiff did not get the requested test during the remainder of his incarceration at the NCCC. (*Id.* at 90.) Defendants have submitted evidence that they made efforts to get plaintiff tested and, in fact, scheduled plaintiff for a test at Stony Brook University Hospital on November 29, 2007, but that the test had to be cancelled due to "unforeseen circumstances"; the test was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

re-scheduled for January 10, 2008. (Defs.' Ex. G, Reschke Aff. ¶¶ 6-7.) Plaintiff was not informed about any scheduled test (Pl.'s Opp. at 2), and he was **351** transferred to a different facility in December 2007. (Price Dep. at 35; Reschke Aff. ¶ 7.)

### C. Shoulder Pain

Plaintiff began complaining about shoulder pain to the medical department at the NCCC on January 17, 2007, stating that his right shoulder was "extremely hurting." (Price Dep. at 36; Defs.' Ex. E, Sick Call Request, Jan. 17, 2007.) Plaintiff had received treatment for shoulder pain in the past, including a shot of Cortisone while at the Elmira facility (Price Dep. at 38, 53-54; Defs.' Ex. E, Sick Call Request, Apr. 14, 2007.) After the January 17 complaint, plaintiff was seen a couple of days later and given medication to rub on his shoulder. (Price Dep. at 41.) The medication did not help with the discomfort, and so plaintiff complained again later in January. (Id. at 42-43.) Although defendants gave plaintiff Motrin and Naprosyn for the pain, no x-rays were taken for several months. (Id. at 44, 55; Defs.' Ex. H, Edwards Aff. ¶ 4.) The pain medication continued to be ineffective, and plaintiff continued to complain. (See, e.g., id. at 45, 51.) For instance, in June 2007, plaintiff complained that his right shoulder "hurts really bad." (Def.'s Ex. E, Sick Call Request, June 12, 2007.) Plaintiff never refused medication for his shoulder. (Price Dep. at 56.) When plaintiff eventually was given x-rays, in April and November 2007 (Edwards Aff. ¶ 4), plaintiff was told that nothing was wrong with his shoulder.[FN8] (Price Dep. at 44; see also Defs.' Ex. J, Discharge Summary, November 2007 ("Although no definite evidence of venous thrombosis is seen with Rt. upper extremity, short segment acute thrombosis cannot be reliably excluded, Ultrasound might provide additional information....").) Plaintiff states that, with respect to his right shoulder, he currently wears a brace for carpal tunnel syndrome, has a separated shoulder, and takes shots for the pain. (Pl.'s Opp. at 4.)

FN8. Plaintiff testified that he stopped complaining about his shoulder at some point because he was frustrated that defendants were not helping. (Price Dep. at 54-55.) There is evidence that plaintiff complained about his shoulder at least as late as June 2007, and again

complained in November 2007, which resulted in the taking of additional x-rays. (See Def.'s Ex. E, Sick Call Request, June 21, 2007; Defs.' Ex. J.)

### II. PROCEDURAL HISTORY

On June 28, 2007, plaintiff filed the initial complaint in this action. Plaintiff filed an amended complaint on August 20, 2007 alleging, pursuant to Section 1983, that defendants Sheriff Edward Reilly, Kim Edwards, Perry Intal, and Nassau University Medical Center violated his Eighth Amendment rights with respect to his medication dosage, kidney transplant request, and shoulder pain. On November 14, 2007, plaintiff filed another complaint in a separate action (No. 07-CV-4841) making substantially the same allegations and expanding on his allegations regarding the kidney transplant request. This complaint named Mary Sullivan and Dr. Benjamin Okonta, as well as the Nassau University Medical Center, as defendants. By Order dated July 11, 2008, the Court consolidated both actions (Nos. 07-CV2634 and 07-CV-4841) because the allegations in the two actions were "factually intertwined."

Defendants moved for summary judgment on May 29, 2009.[FN9] Plaintiff submitted **352** an opposition to the motion on August 3 and August 11, 2009.[FN10] Defendants replied on August 20, 2009. Plaintiff submitted a surreply on October 6, 2009. This matter is fully submitted.

FN9. Pursuant to Local Rule 56.1, defendants also served plaintiff with the requisite notice for pro se litigants opposing summary judgment motions. See Irby v. N.Y. City Transit Auth., 262 F.3d 412, 414 (2d Cir.2001) ("And we remind the district courts of this circuit, as well as summary judgment movants, of the necessity that pro se litigants have actual notice, provided in an accessible manner, of the consequences of the pro se litigant's failure to comply with the requirements of Rule 56.").

FN10. Plaintiff submitted his two identical oppositions and a sur-reply to the instant motion not only in this action, but also in the now-consolidated action (No. 07-CV-4841). The

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

Court has considered all of plaintiff's submissions in both actions in deciding the instant motion.

### III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.,* 591 F.3d 101, 104 (2d Cir.2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original)). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S.Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed.

*R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

[4][5] Where the plaintiff is proceeding *pro se,* the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (alterations in original) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported **353 by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.,* 653 F.Supp.2d 499, 502 (S.D.N.Y.2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009))).

### IV. DISCUSSION

[6] To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

There is no dispute for purposes of this motion that defendants were acting under color of state law. The question presented, therefore, is whether defendants' alleged conduct deprived plaintiff of his Eighth Amendment rights. Plaintiff alleges that his Eighth Amendment rights were violated when defendants: (1) prescribed him an incorrect dosage of medication for his renal disease; (2) failed to get him tested for the kidney

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

transplant list; and (3) failed to adequately treat him for his shoulder pain. For the reasons set forth below, after drawing all reasonable inferences from the facts in favor of plaintiff, the Court concludes that defendants are entitled to summary judgment on plaintiff's claim regarding the dosage of his medication and on all of plaintiff's claims against Sheriff Reilly. Defendants' motion for summary judgment is denied in all other respects.

### A. Exhaustion

As a threshold matter, defendants argue that plaintiff is barred from raising any Eighth Amendment claim with respect to his kidney transplant request because plaintiff has not exhausted his administrative remedies.[FN11] For the reasons set forth below, the Court disagrees and cannot conclude from this record that plaintiff failed to exhaust his administrative remedies.

> FN11. Defendants raise exhaustion only with respect to plaintiff's kidney transplant request, and so the Court does not consider exhaustion with respect to plaintiff's other claims.

### 1. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir.2009) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368

(2006). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *354 Espinal, 558 F.3d at 124 (citing Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) and Woodford, 548 U.S. at 88-90, 126 S.Ct. 2378).

Prior to Woodford, 548 U.S. 81, 126 S.Ct. 2378 (2006), the Second Circuit "recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance." Reynoso v. Swezey, 238 Fed.Appx. 660, 662 (2d Cir.2007) (internal citations omitted); see also Davis v. New York, 311 Fed.Appx. 397, 399 (2d Cir.2009) (citing Hemphill v. New York, 380 F.3d 680, 686, 691 (2d Cir.2004)). However, the Second Circuit has not decided whether the above-discussed considerations apply post- Woodford. See, e.g., Reynoso, 238 Fed.Appx. at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether Woodford has bearing on them."); Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir.2006) ("We need not determine what effect Woodford has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre- Woodford case law.").

As the Supreme Court has held, exhaustion is an affirmative defense: "We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); see also Key v. Toussaint, 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) ("Failure to exhaust remedies under the PLRA is an affirmative defense, and thus the defendants have the

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

### 2. Application

Defendants argue that plaintiff did not appeal the resolution of his grievance request, i.e., the memo from Edwards dated October 5, 2007, stating that: "If you are in need of a 'test', documentation must be provided by the attending physician that is responsible for your renal treatment." (Defs.' Ex. F.) Therefore, defendants argue, plaintiff has failed to exhaust his administrative remedies under the PLRA. (Defs.' Br. at 25.) Plaintiff argues in response that he did not believe any further action on his grievance was "necessary" because the matter was put into the hands of the medical department. (Pl.'s Opp. at 3.) For the reasons discussed below, the Court concludes that, on this record, defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies.

[7][8][9] As discussed above, the PLRA requires exhaustion only with respect to "such administrative remedies as are available." See 42 U.S.C. § 1997e(a). Therefore, in order to determine whether plaintiff exhausted his administrative remedies, the Court "must first establish from a legally sufficient source that an administrative remedy is applicable and that the particular complaint does not fall within an exception. Courts should be careful to look at the applicable set of grievance procedures,*355 whether city, state or federal." Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir.2003); see also Espinal, 558 F.3d at 124 (holding that, when considering exhaustion, courts must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures" (citations omitted)). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They are, or inevitably contain, questions of law." See Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir.1999). However, "the existence of the procedure may be a matter of fact." Id. at 114.

On the record before the Court on this motion, the Court

is unable to establish from any legally sufficient source that an administrative remedy was available to plaintiff. Defendants have made no submissions to the Court regarding the applicable grievance procedures at the NCCC. See, e.g., Abney v. County of Nassau, 237 F.Supp.2d 278, 281 (E.D.N.Y.2002) (noting that the "Inmate Handbook" for the Nassau County Correctional Facility procedure was "annexed to Defendants' moving papers"). Specifically, defendants have not submitted any evidence, by affidavit or otherwise, that NCCC procedures offer a remedy to address the particular situation in this case.[FN12] Therefore, the Court cannot conclude from this record that plaintiff had an available administrative remedy that he failed to exhaust.

FN12. The Court notes that the October 5, 2007 memo from Edwards is unclear as to which party bore the responsibility of obtaining plaintiff's medical records. (Defs.' Ex. F.) Edwards explains in an affidavit that she advised plaintiff that "it would be necessary for his doctors to provide the selected facility with his records before a request for testing would be considered." (Edwards Aff. ¶ 2.) It is unclear whether plaintiff had access to these records or whether the prison would need to obtain them. Thus, there appears to be a factual question as to the implementation of this grievance resolution. A similar situation arose in Abney v. McGinnis, 380 F.3d 663 (2d Cir.2004), in which the Second Circuit held that where a prisoner achieved favorable results in several grievance proceedings but alleged that prison officials failed to implement those decisions, that prisoner was without an administrative remedy and therefore had exhausted his claim for purposes of the PLRA. See id. at 667-68, 669 ("Where, as here, prison regulations do not provide a viable mechanism for appealing implementation failures, prisoners in [plaintiff's] situation have fully exhausted their available remedies."). The Court recognizes that Abney, 380 F.3d 663, was decided before Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), and that, as discussed above, the Second Circuit has not decided whether the various nuances to the exhaustion requirement apply post- Woodford. However, the Court need not decide the applicability of any such nuances to the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

exhaustion requirement because, as discussed above, defendants have failed to establish the procedural framework for grievance resolution at the NCCC and the availability of *any* administrative remedies.

Although there may be administrative remedies for such a situation under the New York Department of Corrections regulations, *see* 7 N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(c)(4) ("If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), it does not follow that the same procedure applies at the NCCC. *See, e.g., Abney v. County of Nassau,* 237 F.Supp.2d at 283 ("The flaw in Defendants' argument, however, is that the cases relied upon were all decided under the New York State administrative procedure-none were decided in the context of the procedure relied upon-the Nassau County Inmate Handbook procedure.").

B. Plaintiff's Claims of Deliberate Indifference

1. Legal Standard

"[D]eliberate indifference to serious medical needs of prisoners constitutes the **356** 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" and therefore "states a cause of action under § 1983." *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). As the Second Circuit has explained,

[t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

*Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (citations omitted). Within this framework, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. County of Orange,* 248 Fed.Appx. 232, 236 (2d Cir.2007). Thus, according to the Second Circuit,

[d]efendants may be held liable under § 1983 if they ... exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution. Deliberate indifference is found in the Eighth Amendment context when a prison supervisor knows of and disregards an excessive risk to inmate health or safety .... Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Ortiz v. Goord,* 276 Fed.Appx. 97, 98 (2d Cir.2008) (citations and quotation marks omitted); *see also Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) ("Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' ") (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *Curry v. Kerik,* 163 F.Supp.2d 232, 237 (S.D.N.Y.2001) (" '[A]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' ") (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks omitted)).

[10][11] In particular, the Second Circuit has set forth a two-part test for determining whether a prison official's actions or omissions rise to the level of deliberate indifference:

The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

**\*357** Hayes, 84 F.3d at 620 (internal citation omitted); see also Phelps v. Kapnolas, 308 F.3d 180, 185-86 (2d Cir.2002) (setting forth two-part deliberate indifference test).

In Salahuddin v. Goord, the Second Circuit set forth in detail the objective and subjective elements of a medical indifference claim. 467 F.3d 263 (2d Cir.2006). In particular, with respect to the first, objective element, the Second Circuit explained:

The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.

Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is

sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an inmate's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

467 F.3d at 279-80 (citations and quotation marks omitted); see also Jones v. Westchester County Dep't of Corr. Medical Dep't, 557 F.Supp.2d 408, 413-14 (S.D.N.Y.2008).

With respect to the second, subjective component, the Second Circuit further explained:

The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware **\*358** of a substantial risk that serious inmate harm will result. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. But recklessness

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.

_Salahuddin,_ 467 F.3d at 280 (citations and quotation marks omitted); *see also* _Jones,_ 557 F.Supp.2d at 414. The Supreme Court has stressed that

in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

_Estelle v. Gamble,_ 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal citations omitted); *see also* _Hernandez v. Keane,_ 341 F.3d 137, 144 (2d Cir.2003) ("A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations omitted)); _Harrison v. Barkley,_ 219 F.3d 132, 139 (2d Cir.2000) (a medical practitioner who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not evince the culpability necessary for deliberate indifference).

2. Application

Plaintiff alleges that defendants violated his Eighth Amendment rights by: (1) prescribing an incorrect dosage of his renal disease medication; (2) failing to have him tested for the kidney transplant list; and (3) failing to properly treat his shoulder pain. The Court considers each claim in turn and, for the reasons discussed below, concludes that defendants are entitled to summary

judgment on plaintiff's claim regarding his medication dosage and on all of plaintiff's claims against Sheriff Reilly. Defendants' motion is denied in all other respects.

a. Medication Dosage

Defendants concede that plaintiff's kidney condition is serious (Defs.' Br. at 21), but argue that the dosage of Renagel and PhosLo prescribed for plaintiff did not result in any injury. Defendants also argue that, even if the dosage was incorrect, it was at most "an error in medical judgment." Finally, defendants argue that plaintiff cannot show deliberate indifference because defendants continually tested plaintiff and twice changed the dosage of his medication depending on his phosphorous levels. (Defs.' Br. at 22.) For the reasons set forth below, the Court agrees and concludes that no rational jury could find that defendants acted with deliberate indifference with respect to the prescription **\*359** of medication for plaintiff's renal disease.

i. Objective Prong

[12][13][14] Plaintiff has failed to present any evidence that the allegedly incorrect medication dosage posed an objectively serious risk to plaintiff's health. As a threshold matter, the mere fact that plaintiff's underlying renal disease is a serious medical condition does not mean that the allegedly incorrect treatment for that condition poses an objectively serious health risk. *See* _Smith v. Carpenter,_ 316 F.3d 178, 186-87 (2d Cir.2003) ("As we noted in _Chance_ [_v. Armstrong,_ 143 F.3d 698 (2d Cir.1998) ], it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."). Furthermore, plaintiff has failed to produce any evidence that his medication dosage at the NCCC caused him any objectively serious harm. Instead, plaintiff testified merely that the prescribed dosage was "wrong" and was "hurting" him.[FN13] (Price Dep. at 60.) Plaintiff's belief that the medication dosage was incorrect is insufficient to establish the objective prong of the deliberate indifference test.[FN14] *See* _Fox v. Fischer,_ 242 Fed.Appx. 759, 760 (2d Cir.2007) ("[T]he fact that [plaintiff] was provided Claritin as a substitute for Allegra

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

fails to establish deliberate indifference to a serious medical need, because there is no allegation that the change in medication caused harm, if any, sufficiently serious to establish the objective prong of a deliberate indifference claim...."); *Reyes v. Gardener,* 93 Fed.Appx. 283, 285 (2d Cir.2004) ( "[Plaintiff] has offered no evidence ... showing that the prescribed medication regimen deviated from reasonable medical practice for the treatment of his condition."). Although there is evidence that plaintiff's phosphorous levels increased when he was prescribed a lesser dosage of medication upon arriving at the NCCC (*see* Price Dep. **\*360** at 23-26), that is not by itself enough to support a finding of an objectively serious condition.[FN15] *See Smith,* 316 F.3d at 188-89 ("Although [plaintiff] suffered from an admittedly serious underlying condition, he presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health, nor did he present any evidence explaining why the absence of actual physical injury was not a relevant factor in assessing the severity of his medical need.") (affirming denial of motion for new trial). Thus, plaintiff's medication dosage claim must fail because he cannot show that the complained-of dosage posed an objectively serious health risk.[FN16]

> FN13. Plaintiff does not distinguish between the initial dosage he received at the NCCC and the later dosages he received, instead arguing generally that all of the dosages he received at the NCCC were incorrect.

> FN14. Plaintiff's conclusory testimony that the dosage was "hurting" him also is insufficient to establish the objective prong of the deliberate indifference test. To the extent plaintiff claims that the medication caused him pain, there is no evidence in the record that plaintiff suffered from chronic pain or, indeed, any other objectively serious symptoms in connection with the medication dosage. Although not mentioned in plaintiff's deposition or in his opposition to the instant motion, plaintiff alleges in his amended complaint that the lesser dosage put him at risk of "itching" and "breaking of bones." (Amended Complaint, No. 07-CV-2634, at 4.) There is evidence that plaintiff suffered from a rash and/or itching while at the NCCC and that plaintiff was told at one point that he had

eczema. (*See* Price Dep. at 45-51.) However, there is no evidence to connect those symptoms with the medication dosage for his renal disease. (*See, e.g., id.* at 46 ("Q. Did anyone ever tell you what was causing a rash? A. I kept going to the-I had went to the dermatologist at Bellevue. To me, the doctor had an attitude like it ain't nothing wrong; like it was acne or something.").) Furthermore, there is no evidence that the rash and/or itching was an objectively serious condition. *See Lewal v. Wiley,* 29 Fed.Appx. 26, 29 (2d Cir.2002) (affirming summary judgment and holding that plaintiff's alleged "persistent rash" was not a "serious medical condition"); *see also Benitez v. Ham,* No. 04-CV-1159, 2009 WL 3486379, at \*11 (N.D.N.Y. Oct. 21, 2009) ("[T]he evidence shows that Plaintiff suffered from a severe body itch. While this condition was undoubtedly unpleasant, it simply does not rise to the level of an Eighth Amendment violation."). In any event, even if plaintiff did suffer from an objectively serious condition because of the medication dosage, he cannot prove that defendants acted with a subjectively culpable state of mind, as discussed *infra.*

> FN15. In any event, as discussed *infra,* defendants adjusted plaintiff's dosage in response to the increase in phosphorous levels, and there is no evidence from which a rational jury could conclude that defendants acted with deliberate indifference in prescribing plaintiff's medication.

> FN16. Although he does not raise it in any of his pleadings or in his opposition to the instant motion, plaintiff testified at his deposition that he had to take the medication with meals but that sometimes he was given the medication without food or at times that interfered with his meals. (Price Dep. at 23, 60; Defs.' Ex. E.) The record is unclear as to how often this occurred. The Court assumes, as it must on this motion for summary judgment, that on some occasions plaintiff was given his medications not at meal times or at times that interfered with meals. However, plaintiff points to no evidence whatsoever of any harm caused by defendants' alleged conduct in this regard, and, therefore, no

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

rational jury could find that the provision of medication without food on some occasions was objectively serious. *See* Gillard v. Kuykendall, 295 Fed.Appx. 102, 103 (8th Cir.2008) (affirming summary judgment for defendants where defendants, on some occasions, "were late in giving [plaintiff] his medications and did not always administer them with meals as [plaintiff] apparently desired" where there was no evidence of any adverse consequences). Thus, any deliberate indifference claim based on these allegations would fail as well.

ii. Subjective Prong

[15][16] Plaintiff's claim with respect to his medication dosage also fails because plaintiff cannot show that defendants acted with subjectively culpable intent, i.e., that they were aware of, and consciously disregarded, plaintiff's serious medical needs. Plaintiff's claim is based on his assertion that the prescribed dosage was "wrong." However, mere disagreement with a prescribed medication dosage is insufficient as a matter of law to establish the subjective prong of deliberate indifference. *See* Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) ("[D]isagreements over medications ... are not adequate grounds for a Section 1983 claim. Those issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." (citing Estelle, 429 U.S. at 107, 97 S.Ct. 285)); *see also, e.g.,* Fuller v. Ranney, No. 06-CV-0033, 2010 WL 597952, at *11 (W.D.N.Y. Feb. 17, 2010) ("Plaintiff's claim amounts to nothing more than a disagreement with the prescribed treatment he received and his insistence that he be prescribed certain medications. Without more, plaintiff's disagreement with the treatment he received does not rise to the level of a constitutional violation of his Eighth Amendment rights."); Covington v. Westchester County Dep't of Corr., No. 06 Civ. 5369, 2010 WL 572125, at *6 (S.D.N.Y. Jan. 25, 2010) ("[Plaintiff's] claims that Defendants failed **361 to change or increase his medication and counseling

sessions amount to negligence claims at most, which is insufficient."); Hamm v. Hatcher, No. 05-CV-503, 2009 WL 1322357, at *8 (S.D.N.Y. May 5, 2009) ("Plaintiff's unfulfilled demand for a larger dosage of [the medication] represents a mere disagreement over the course of Plaintiff's treatment and is inconsistent with deliberate indifference ....").

The fact that defendants adjusted the dosage of plaintiff's medication in response to plaintiff's phosphorous levels (*see* Price Dep. at 25-27) is also inconsistent with deliberate indifference. *See* Bellotto v. County of Orange, 248 Fed.Appx. 232, 237 (2d Cir.2007) ("The record also shows that mental health professionals responded to [plaintiff's] concerns about his medications and adjusted his prescription as they believed necessary.") (affirming summary judgment for defendants); *see also* Jolly v. Knudsen, 205 F.3d 1094, 1097 (8th Cir.2000) ("[Defendant's] actions in this case cannot reasonably be said to reflect deliberate indifference. The only relevant evidence in the record indicates that [defendant's] actions were aimed at correcting perceived difficulties in [plaintiff's] dosage levels [in response to blood tests]."); Fuller, 2010 WL 597952, at *11 ("Moreover, a subsequent decision to prescribe plaintiff a certain medication does not indicate that the medication should have been prescribed earlier.").[FN17] Thus, there is no evidence in the record sufficient for a rational jury to find that defendants acted with deliberate indifference regarding the prescription dosage of plaintiff's renal disease medication.

FN17. To the extent plaintiff also argues that that defendants acted with deliberate indifference because he has received different prescriptions at different facilities, the Court rejects that argument as well. *See, e.g.,* Cole v. Goord, No. 04 Civ. 8906, 2009 WL 1181295, at *8 n. 9 (S.D.N.Y. Apr. 30, 2009) ("[Plaintiff's] reliance upon the fact that subsequent medical providers have provided him with a different course of medication or treatment ... does nothing to establish that [defendant] violated [plaintiff's] Eighth Amendment rights. Physicians can and do differ as to their determination of the appropriate treatment for a particular patient; that difference in opinion does not satisfy the requirements for a constitutional claim of deliberate indifference."

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

(citing *Estelle,* 429 U.S. at 97, 97 S.Ct. 285)).

In sum, based on the undisputed facts and drawing all reasonable inferences in plaintiff's favor, no rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's objectively serious health needs regarding his medication dosage. Accordingly, defendants' motion for summary judgment is granted with respect to this claim.

b. Kidney Transplant

[17] Defendants also argue that plaintiff cannot proceed with his deliberate indifference claim regarding his request to be tested for a kidney transplant. Defendants do not dispute the objective seriousness of plaintiff's underlying condition or the requested transplant, and instead argue only that defendants lacked subjective culpability. Specifically, defendants argue that they made reasonable efforts to get plaintiff tested. (Defs.' Br. at 23.) However, construing the facts in the light most favorable to plaintiff, a rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's serious medical needs.

Plaintiff began requesting a kidney transplant test as early as February or March 2007 and still had not received one by the time he left the NCCC in December 2007. (*See* Price Dep. at 76-77, 90.) Requests were sent on plaintiff's behalf to Dr. Okonta at the Nassau University Medical Center and to Nurse Mary Sullivan at the NCCC medical department. (*See* Defs.' Ex. K.) The record indicates that plaintiff received no response from Okonta. (*See* Price Dep. at 82.) When plaintiff asked Sullivan about the test, Sullivan told him that defendants had "other priorities right now." (Price Dep. at 70.) Even after plaintiff filed a formal grievance in September 2007, he still did not receive the requested test. (*See* Defs.' Ex. F.) On these facts, where there was a delay of at least nine months in arranging a kidney transplant test for plaintiff despite plaintiff's repeated requests, and where defendants do not dispute the necessity of the test, a rational jury could find that defendants acted with deliberate indifference to plaintiff's serious medical needs. *See Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000) (holding summary judgment inappropriate where there

was evidence that, *inter alia,* plaintiff was delayed dental treatment for a cavity for one year); *Hathaway v. Coughlin,* 841 F.2d 48, 50-51 (2d Cir.1988) ("[Plaintiff's] affidavit in opposition to [defendants'] motion for summary judgment alleged that a delay of over two years in arranging surgery ... amounted to deliberate indifference to his serious medical needs. We believe this is a sufficient allegation to survive a motion for summary judgment under *Archer* [*v. Dutcher,* 733 F.2d 14 (2d Cir.1984)] because it raises a factual dispute ...."); *see also Lloyd v. Lee,* 570 F.Supp.2d 556, 569 (S.D.N.Y.2008) ("A reasonable jury could infer deliberate indifference from the failure of the doctors to take further steps to see that [plaintiff] was given an MRI. The argument that the doctors here did not take [plaintiff's] condition seriously is plausible, given the length of the delays. Nine months went by after the MRI was first requested before the MRI was actually taken.").

Defendants point to evidence in the record that they were, in fact, attempting to get plaintiff tested throughout the time in question, but were unsuccessful in their efforts. (*See* Defs.' Br. at 23; Reschke Aff. ¶ 3.) However, defendants' proffered explanation for the delay, i.e., the difficulty of finding a hospital because of transportation and security concerns, raises questions of fact and does not, as a matter of law, absolve them of liability. *See Johnson v. Bowers,* 884 F.2d 1053, 1056 (8th Cir.1989) ("It is no excuse for [defendants] to urge that the responsibility for delay in surgery rests with [the hospital]."); *Williams v. Scully,* 552 F.Supp. 431, 432 (S.D.N.Y.1982) (denying summary judgment where plaintiff "was unable to obtain treatment ... for five and one half months, during which time he suffered considerable pain" despite defendants' "explanations for the inadequacy of [the prison's] dental program"), *cited approvingly in Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000). Thus, whether defendants' efforts were reasonable over the nine month period at issue is a question of fact for the jury.

In sum, on this record, drawing all reasonable inferences in plaintiff's favor, the Court concludes that a rational jury could find that defendants acted with deliberate indifference regarding plaintiff's request for a kidney transplant test. Accordingly, defendants' motion for summary judgment on this claim is denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

c. Shoulder

Defendants argue that summary judgment is warranted on the claim relating to the alleged shoulder injury because plaintiff's complained-of shoulder pain was not objectively serious and plaintiff has failed to show subjectively culpable intent by defendants. For the reasons set forth below, the Court disagrees and concludes that a rational jury could find that defendants acted with deliberate indifference **363 regarding plaintiff's shoulder pain. Thus, summary judgment on this claim is denied.

i. Objective Prong

[18][19] Defendants argue that plaintiff cannot satisfy the objective element of the deliberate indifference test regarding his shoulder because plaintiff alleges only that he had pain in his shoulder and not that he had "a condition of urgency, one that might produce death, deterioration or extreme pain." (Defs.' Br. at 22.) However, plaintiff did complain to the medical department that his right shoulder was "extremely hurting." (Defs.' Ex. E, Sick Call Request, Jan. 17, 2007.) Furthermore, plaintiff states that he now has a separated shoulder and wears a brace for carpal tunnel syndrome. (Pl.'s Opp. at 4.) In any event, chronic pain can be a serious medical condition. See Brock v. Wright, 315 F.3d 158, 163 (2d Cir.2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain. We do not, therefore, require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one."); Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir.1994); see also Sereika v. Patel, 411 F.Supp.2d 397, 406 (S.D.N.Y.2006) ( "[Plaintiff's] allegation that he experienced severe pain as a result of the alleged delay in treatment, together with his allegation that the alleged delay in treatment resulted in reduced mobility in his arm and shoulder, raise issues of fact as to whether his shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberate indifference standard.") (denying summary judgment). Thus, the Court cannot conclude at the summary judgment stage that plaintiff did not suffer from a serious medical condition.

ii. Subjective Prong

Defendants also argue that plaintiff cannot meet the subjective prong of the deliberate indifference test because plaintiff was seen repeatedly by the medical department and was given pain medication. (Defs.' Br. at 22.) Defendants also point to the fact that when x-rays were ultimately taken, they were negative.[FN18] However, construing the facts most favorably to plaintiff, a rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's serious medical needs. Plaintiff repeatedly complained to defendants over a period of several months, beginning in January 2007, about the pain in his shoulder (see Defs.' Ex. E), and further complained that the pain medication he was being given was ineffective.[FN19] (See, e.g., Price Dep. at 45, 51.) In June 2007, for instance, plaintiff was still complaining that his right shoulder "hurts really bad," and that he had been "complaining of that for months." (Def.'s Ex. E, Sick Call Requests, June 12 and June 17, 2007.) Thus, it is uncontroverted that defendants were aware of plaintiff's alleged chronic shoulder pain.

FN18. The November 2007 x-ray records indicate that "short segment acute thrombosis cannot be reliably excluded, Ultrasound might provide additional information ...." (See Defs.' Ex. J, Discharge Summary, November 2007.) Defendants point to no evidence in the record that they followed up on that x-ray report.

FN19. Plaintiff also informed defendants that he had been given a Cortisone shot for his shoulder at his previous place of incarceration. (See Price Dep. at 38, 53-54; Defs.' Ex. E, Sick Call Request, Apr. 14, 2007.)

Despite plaintiff's complaints, however, plaintiff was not given an x-ray exam for several months (Price Dep. at 44; Def.'s *364 Ex. J), and was not given any pain medication besides Motrin and Naprosyn. (Price Dep. at 55.) Although defendants argue that the treatment for plaintiff's shoulder pain was reasonable under the circumstances, there are factual questions in this case that preclude

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

summary judgment. *See Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ("Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.") (reversing grant of motion to dismiss). Drawing all reasonable inferences from the facts in favor of plaintiff, a rational jury could find that defendants acted with deliberate indifference by not changing plaintiff's pain medication despite his continued complaints that it was ineffective, by failing to take x-rays for several months, and by failing to follow-up on a November 2007 x-ray report indicating that further tests might be needed (*see* Defs.' Ex. J, Discharge Summary, November 2007). *See Brock,* 315 F.3d at 167 ("It is not controverted that [defendant] was aware that [plaintiff] was suffering some pain from his scar. The defendants sought to cast doubt on the truthfulness of [plaintiff's] claims about the extent of the pain he was suffering and, also, to put into question DOCS' awareness of [plaintiff's] condition. But at most, defendants' arguments and evidence to these effects raise issues for a jury and do not justify summary judgment for them."); *Hathaway,* 37 F.3d at 68-69 (holding that, *inter alia,* two-year delay in surgery despite plaintiff's repeated complaints of pain could support finding of deliberate indifference). The fact that defendants offered some treatment in response to plaintiff's complaints does not as a matter of law establish that they had no subjectively culpable intent. *See Archer v. Dutcher,* 733 F.2d 14, 16 (2d Cir.1984) ("[Plaintiff] received extensive medical attention, and the records maintained by the prison officials and hospital do substantiate the conclusion that [defendants] provided [plaintiff] with comprehensive, if not doting, health care. Nonetheless, [plaintiff's] affidavit in opposition to the motion for summary judgment does raise material factual disputes, irrespective of their likely resolution.... [Plaintiff's] assertions] do raise material factual issues. After all, if defendants did decide to delay emergency medical-aid-even for 'only' few hours-in order to make [plaintiff] suffer, surely a claim would be stated under *Estelle.*"). Specifically, given the factual disputes in this case, the Court cannot conclude as a matter of law that defendants did not act with deliberate indifference when they allegedly declined to change their treatment for plaintiff's shoulder pain despite repeated complaints over several months that the pain persisted. *See, e.g., Lloyd,* 570 F.Supp.2d at 569 ("[T]he amended complaint plausibly alleges that doctors knew that [plaintiff] was experiencing extreme pain and loss of mobility, knew that the course of treatment they prescribed was ineffective, and declined to do anything to attempt to improve

[plaintiff's] situation besides re-submitting MRI request forms.... Had the doctors followed up on numerous requests for an MRI, the injury would have been discovered earlier, and some of the serious pain and discomfort that [plaintiff] experienced for more than a year could have been averted."). Thus, there are factual disputes that prevent summary judgment on defendants' subjective intent.

In sum, on this record, drawing all reasonable inferences from the facts in favor of plaintiff, a rational jury could find that defendants acted with deliberate indifference to plaintiff's shoulder pain. Accordingly, defendants' motion for summary judgment on this claim is denied.

**\*365** C. Individual Defendants

Defendants also move for summary judgment specifically with respect to plaintiff's claims against three of the individual defendants: Sheriff Edward Reilly (hereinafter "Reilly"), Edwards, and Okonta. For the reasons set forth below, the Court grants defendants' motion with respect to Reilly, and denies it with respect to Edwards and Okonta.

1. Legal Standard

[20] "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citation and quotation marks omitted). In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Id.* Supervisor liability can be shown in one or more of the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Id.* at 145 (citation omitted).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 21

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

2. Application

[21] Although plaintiff alleges in the complaint that Reilly was aware of plaintiff's condition and failed to assist,[FN20] there is no mention whatsoever of Reilly in plaintiff's deposition or in any of the parties' evidentiary submissions. Because there is no evidence in the record that Reilly was personally involved in any of the alleged constitutional violations or that there was a custom or policy of allowing such constitutional violations (and that Reilly allowed such custom or policy to continue), no rational jury could find Reilly liable for any of plaintiff's deliberate indifference claims. *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."); *see also Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438-39 (E.D.N.Y.2009) ("[T]he plaintiff cannot establish that Sheriff Reilly was grossly negligent in failing to supervise subordinates because the medical care of inmates at the NCCC was delegated to the Nassau Health Care Corporation and plaintiff provides no evidence that Reilly was otherwise personally involved in his treatment."). Therefore, defendants' motion for summary judgment with respect to plaintiff's claims against Sheriff Reilly is granted.

> FN20. Plaintiff actually refers in the complaint to "Sheriff Edwards," but the Court determines, liberally construing the complaint, that this allegation refers to Sheriff Reilly.

[22] With respect to plaintiff's claims against Edwards and Okonta, however, there are disputed issues of fact that preclude summary judgment. Defendants argue that Edwards was not personally involved in the alleged constitutional violations because she did not treat plaintiff and merely responded to his grievance request. (Defs.' Br. at 24-25.) However, plaintiff testified that, although Edwards never physically treated him, she "takes care of appointments and makes sure you get to certain specialists" and that "she was in a position to make sure that I get the adequate care that I needed." (Price Dep. at 61-62.) Plaintiff also testified that he submitted a grievance request to *366 Edwards in order to be tested for the kidney transplant list, but that Edwards failed to get him on the list. (Price Dep. at 62-63.) Drawing all

reasonable inferences in favor of plaintiff, a rational jury could find that Edwards was personally involved in the alleged constitutional violations because she was in a position to get plaintiff tested for the kidney transplant list and failed to do so. *See McKenna v. Wright,* 386 F.3d 432, 437-38 (2d Cir.2004) ("Although it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of, [defendant] was properly retained in the lawsuit at this stage, not simply because he rejected the grievance, but because he is alleged, as Deputy Superintendent for Administration at [the prison], to have been responsible for the prison's medical program." (citation omitted)). Thus, plaintiff has presented sufficient evidence of Edwards's personal involvement in the alleged constitutional violations to raise a genuine issue of material fact as to whether Edwards is liable for the alleged Eighth Amendment violations.

[23][24] Defendants also argue that Okonta was not personally involved in the alleged constitutional violations because he did not actually treat plaintiff. (Defs.' Br. at 24-25.) This argument misses the mark. It is plaintiff's allegation that Okonta violated plaintiff's constitutional rights precisely by not treating him. Plaintiff has presented evidence that he received no response from Okonta regarding his requests to be tested for the kidney transplant list. Where a prison doctor denies medical treatment to an inmate, that doctor is personally involved in the alleged constitutional violation. *See McKenna,* 386 F.3d at 437 (finding "personal involvement" where medical defendants were alleged to have participated in the denial of treatment); *see also Chambers v. Wright,* No. 05 Civ. 9915, 2007 WL 4462181, at *3 (S.D.N.Y. Dec. 19, 2007) ("Prison doctors who have denied medical treatment to an inmate are 'personally involved' for the purposes of jurisdiction under § 1983." (citing *McKenna,* 386 F.3d at 437)). Although defendants argue that they were in fact making efforts to get plaintiff tested (Defs.' Br. at 25), the reasonableness of those efforts, as discussed above, is a factual question inappropriate for resolution on summary judgment.

In sum, defendants' motion for summary judgment on plaintiff's claims against Reilly is granted. Defendants' motion with respect to Edwards and Okonta is denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

### V. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment. Specifically, the Court grants defendants' motion with respect to plaintiff's claim regarding the dosage of his renal disease medication and with respect to all of plaintiff's claims against Sheriff Reilly. Defendants' motion is denied in all other respects. The parties to this action shall participate in a telephone conference on Monday, April 5, 2010 at 3:30 p.m. At that time, counsel for defendants shall initiate the call and, with all parties on the line, contact Chambers at (631) 712-5670.

SO ORDERED.

E.D.N.Y.,2010.
Price v. Reilly
697 F.Supp.2d 344

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

C  Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Karus LAFAVE, Plaintiff,
v.
CLINTON COUNTY, Defendants.
**No. CIV.9:00CV0744DNHGLS.**

April 3, 2002.

Karus Lafave, Plaintiff, Pro Se, Plattsburgh, for the Plaintiff.

Maynard, O'Connor Law Firm, Albany, Edwin J. Tobin, Jr., Esq., for the Defendants.

REPORT-RECOMMENDATION [FN1]

> FN1. This matter was referred to the undersigned for Report-Recommendation by the Hon. David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and L.R. 72.3(c).

SHARPE, Magistrate J.

I. INTRODUCTION

*1 Plaintiff, *pro se,* Karus LaFave ("LaFave") originally filed this action in Clinton County Supreme Court. The defendant filed a Notice of Removal because the complaint presented a federal question concerning a violation of LaFave's Eighth Amendment rights (Dkt. No. 1). Currently before the court is the defendant's motion to dismiss made pursuant to Rule 12(b)(6) and in the alternative, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure (Dkt. No. 5). LaFave, in response, is requesting that the court deny the motion, excuse his inability to timely file several motions, and to permit the

matter to be bought before a jury [FN2]. After reviewing LaFave's claims and for the reasons set forth below, the defendant's converted motion for summary judgment should be granted.

> FN2. It should be noted that the date for dispositive motions was February 16, 2001. The defendant's motion to dismiss was filed on September 29, 2000. On January 9, 2001, this court converted the defendant's motion to dismiss to a motion for summary judgment, and gave LaFave a month to respond. On April 16, 2001, after three months and four extensions, LaFave finally responded.

II. BACKGROUND

LaFave brings this action under 42 U.S.C. § 1983 claiming that the defendant violated his civil rights under the Eighth Amendment [FN3]. He alleges that the defendant failed to provide adequate medical and dental care causing three different teeth to be extracted.

> FN3. LaFave does not specifically state that the defendant violated his Eighth Amendment rights but this conclusion is appropriate after reviewing the complaint.

III. FACTS [FN4]

> FN4. While the defendant provided the court with a "statement of material facts not in issue" and LaFave provided the court with "statement of material facts genuine in issue," neither provided the court with the exact nature of the facts.

Between January and July of 1999, LaFave, on several occasions, requested dental treatment because he was experiencing severe pain with three of his teeth. After being seen on several occasions by a Clinton County

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

Correctional Facility ("Clinton") doctor, he was referred to a dentist. Initially, LaFave's mother had made an appointment for him to see a dentist, but he alleges that Nurse LaBarge ("LaBarge") did not permit him to be released to the dentist's office [FN5]. Subsequently, he was seen by Dr. Boule, D.D.S ., on two occasions for dental examinations and tooth extractions.

> FN5. This appears to be in dispute because the medical records show that LaFave at first stated that his mother was going to make arrangements, but later requested that the facility provide a dentist.

IV. DISCUSSION

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc ., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); accord F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir.1994).* The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).* Once this burden is met, it shifts to the opposing party who, through affidavits or otherwise, must show that there is a material factual issue for trial. *Fed.R.Civ.P. 56(e); see Smythe v. American Red Cross Blood Services Northeastern New York Region, 797 F.Supp. 147, 151 (N.D.N.Y.1992).*

Finally, when considering summary judgment motions, *pro se* parties are held to a less stringent standard than attorneys. *Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).* Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990).* With this standard in mind, the court

now turns to the sufficiency of LaFave's claims.

B. *Eighth Amendment Claims*

**\*2** LaFave alleges that his Eighth Amendment rights were violated when the defendant failed to provide adequate medical care for his dental condition. The Eighth Amendment does not mandate comfortable prisons, yet it does not tolerate inhumane prisons either, and the conditions of an inmate's confinement are subject to examination under the Eighth Amendment. *Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1975, 128 L.Ed.2d 811 (1994).* Nevertheless, deprivations suffered by inmates as a result of their incarceration only become reprehensible to the Eighth Amendment when they deny the minimal civilized measure of life's necessities. *Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).*

Moreover, the Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ..." against which penal measures must be evaluated. See *Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d (1976).* Repugnant to the Amendment are punishments hostile to the standards of decency that " 'mark the progress of a maturing society.' " *Id. (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)* (plurality opinion)). Also repugnant to the Amendment, are punishments that involve " 'unnecessary and wanton inflictions of pain.' " ' *Id. at 103,97 S.Ct. at 290 (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).*

In light of these elementary principles, a state has a constitutional obligation to provide inmates adequate medical care. See *West v. Atkins, 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988).* By virtue of their incarceration, inmates are utterly dependant upon prison authorities to treat their medical ills and are wholly powerless to help themselves if the state languishes in its obligation. *See Estelle, 429 U.S. at 103, 97 S.Ct. at 290.* The essence of an improper medical treatment claim lies in proof of "deliberate indifference to serious medical

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

needs." *Id.* at 104, 97 S.Ct. at 291. Deliberate indifference may be manifested by a prison doctor's response to an inmate's needs. *Id.* It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment. *Id.* at 104-105, 97 S.Ct. at 291.

The standard of deliberate indifference includes both subjective and objective components. The objective component requires the alleged deprivation to be sufficiently serious, while the subjective component requires the defendant to act with a sufficiently culpable state of mind. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). A prison official acts with deliberate indifference when he " 'knows of and disregards an excessive risk to inmate health or safety.' " *Id.* (*quoting Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979). However, " 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.*

**\*3** However, an Eighth Amendment claim may be dismissed if there is no evidence that a defendant acted with deliberate indifference to a serious medical need. An inmate does not have a right to the treatment of his choice. *See Murphy v. Grabo,* 1998 WL 166840, at \*4 (N.D.N.Y. April 9, 1998) (*citation omitted* ). Also, mere disagreement with the prescribed course of treatment does not always rise to the level of a constitutional claim. *See Chance,* 143 F.3d at 703. Moreover, prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates. *See Murphy,* 1998 WL 166840, at \*4 (*citation omitted* ).

While there is no exact definition of a "serious medical condition" in this circuit, the Second Circuit has indicated what injuries and medical conditions are serious enough to implicate the Eighth Amendment. *See Chance,* 143 F.3d at 702-703. In *Chance,* the Second Circuit held that an inmate complaining of a dental condition stated a serious medical need by showing that he suffered from great pain for six months. The inmate was also unable to chew food and lost several teeth. The Circuit also recognized that dental conditions, along with medical conditions, can vary in severity and may not all be severe. *Id.* at 702. The court acknowledged that while some injuries are not serious enough to violate a constitutional right, other very similar

injuries can violate a constitutional right under different factual circumstances. *Id.*

The Second Circuit provided some of the factors to be considered when determining if a serious medical condition exists. *Id.* at 702-703. The court stated that " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain' ' are highly relevant. *Id.* at 702-703 *(citation omitted* ). Moreover, when seeking to impose liability on a municipality, as LaFave does in this case, he must show that a municipal "policy" or "custom caused the deprivation." *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 137 (2d Cir.1999).

In this case, the defendant maintains that the medical staff was not deliberately indifferent to his serious medical needs. As a basis for their assertion, they provide LaFave's medical records and an affidavit from Dr. Viqar Qudsi [FN6], M.D, who treated LaFave while he was incarcerated at Clinton. The medical records show that he was repeatedly seen, and prescribed medication for his pain. In addition, the record shows that on various occasions, LaFave refused medication because "he was too lazy" to get out of bed when the nurse with the medication came to his cell (*Def. ['s] Ex. A, P. 4)* .

FN6. Dr. Qudsi is not a party to this action.

According to the documents provided, Dr. Qudsi, examined LaFave on January 13, 1999, after LaFave reported to LaBarge that he had a headache and discomfort in his bottom left molar (*Qudsi Aff., P. 2*). Dr. Qudsi noted that a cavity was present in his left lower molar. *Id.* He prescribed Tylenol as needed for the pain and 500 milligrams ("mg") of erythromycin twice daily to prevent bacteria and infection. *Id.* On January 18, 19, and 20, 1999, the medical records show that LaFave refused his erythromycin medication (*Def. ['s] Ex. B, P. 1).*

**\*4** Between January 20, and April 12, 1999, LaFave made no complaints concerning his alleged mouth pain. On

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

April 12, 1999, LaFave was examined by LaBarge due to a complaint of pain in his lower left molar (*Def. ['s] Ex. A, P. 4* ). Dr. Qudsi examined him again on April 14, 1999. *Id.* He noted a cavity with pulp decay and slight swelling with no discharge. *Id.* He noted an abscess in his left lower molar and again prescribed 500 mg erythromycin tablets twice daily and 600 mg of Motrin three times daily for ten days with instructions to see the dentist. *Id.* On the same day, LaBarge made an appointment for LaFave to see an outside dentist that provides dental service to facility inmates, Dr. Boule *(Qudsi Aff., P. 3).*

On May 3, 1999, LaBarge was informed by LaFave that his mother would be making a dental appointment with their own dentist and that the family would pay for the treatment (*Def. ['s] Ex. A, P. 4* ). On that same day, Superintendent Major Smith authorized an outside dental visit. *Id.* On May 12, 1999, he was seen by LaBarge for an unrelated injury and he complained about his lower left molar (*Def .['s] Ex. A, P. 5* ). At that time, LaFave requested that LaBarge schedule a new appointment with Dr. Boule because the family had changed their mind about paying an outside dentist. *Id.* LaBarge noted that he was eating candy and informed him of the deleterious effects of candy on his dental condition. *Id.* Thereafter, LaBarge scheduled him for the next available date which was June 24, 1999, at noon. *Id.*

On June 2, 1999, LaFave again requested sick call complaining for the first time about tooth pain in his upper right molar and his other lower left molar (*Def. ['s] Ex. A, P. 6* ). He claimed that both molars caused him discomfort and bothered him most at night. *Id.* LaFave confirmed that he had received treatment from Dr. Boule for his first lower left molar one week before. *Id.* The area of his prior extraction was clean and dry. *Id.* There was no abscess, infection, swelling, drainage or foul odor noted. *Id.* LaBarge recommended Tylenol as needed for any further tooth discomfort. *Id.*

On June 21, 1999, LaFave again requested a sick call and was seen by LaBarge (*Def. ['s] Ex. A, P. 6* ). No swelling, drainage or infection was observed. *Id.* However, LaBarge noted cavities in LaFave's lower left molar and right lower molars. *Id.* LaBarge made arrangements for Dr. Qudsi to further assess LaFave. *Id.* On June 23, 1999, Dr. Qudsi examined his right lower molar and noted cavitation with

decay in that area (*Def. ['s] Ex. A, P. 7* ). In addition, he noted that LaFave had a cavity in his second left lower molar. *Id.* He prescribed 500 mg of erythromycin twice daily for 10 days and 600 mg of Motrin three times daily for 10 days, with instructions to see a dentist. *Id.*

On June 30, 1999, Officer Carroll reported that LaFave was again non-compliant with his medication regimen as he refused to get up to receive his medication (*Def. ['s] Ex. A, P. 8* ). On July 7, 1999, he again requested sick call complaining of a toothache in his lower right molar (*Def. ['s] Ex. A, P. 9* ). Again, LaFave was non-compliant as he had only taken his erythromycin for five days instead of the ten days prescribed. *Id.* During the examination, Dr. Qudsi informed LaFave that extraction of these teeth could be necessary if he did not respond to conservative treatment. *Id.* At that time, LaFave informed Dr. Qudsi that he was going to be transferred to another facility. *Id.* Dr. Qudsi advised LaFave to follow-up with a dentist when he arrived at the new facility. *Id.* Dr. Qudsi prescribed 500 mg Naproxin twice daily for thirty days with instructions to follow-up with him in two weeks if the pain increased. *Id.* The following day, LaFave requested sick call complaining to LaBarge that he had taken one dose of Naproxin and it was not relieving the pain. *Id.* He was advised that he needed to take more than one dose to allow the Naproxin to take effect. *Id.*

**\*5** On July 17, 1999, LaFave was again seen by Dr. Qudsi and he indicated that he did not believe he was benefitting from the prescribed course of conservative treatment with medication (*Def. ['s] Ex. A, P. 10* ). Subsequently, LaBarge made a dental appointment for him on July 23 [FN7], 1999, at 3:15 p.m. *Id.* On July 23, 1999, a second extraction was conducted. *Id.* On July 28, 1999, he was again seen by Dr. Qudsi, for an ulceration at the left angle of his mouth for which he prescribed bacitracin ointment. *Id.* At this time, LaFave continued to complain of tooth pain so he was prescribed 600 mg of Motrin three times daily. *Id.*

FN7. The medical records contain an error on the July 17, 1999, note which indicted that an appointment was set for June 23, 1999, however, it should have been recorded as July 23, 1999.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

On August 4, 1999, he was seen for feeling a sharp piece of bone residing in the area of his lower left molar (*Def. ['s] Ex. A, P. 11* ). Dr. Qudsi recommended observation and to follow-up with dental care if his condition continued. *Id.* The defendant maintains that given all of the documentation that he was seen when he requested to be seen and prescribed numerous medications, the medical staff was not deliberately indifferent to his serious medical needs. The defendant contends that at all times, professional and contentious dental and medical treatment were provided in regards to his various complaints.

In his response, LaFave disagrees alleging that the county had a custom or policy not to provide medical treatment to prisoners. However, LaFave does not allege in his complaint that the county had a "custom or policy" which deprived him of a right to adequate medical or dental care. In his response to the motion for summary judgment, for the first time, LaFave alleges that the county had a policy which deprived him of his rights. He maintains that his continued complaints of pain were ignored and although he was prescribed medication, it simply did not relieve his severe pain.

This court finds that the defendant was not deliberately indifferent to his serious dental and medical needs. Moreover, even if this court construed his complaint to state a viable claim against the county, LaFave has failed to show that the county provided inadequate medical and dental treatment. As previously stated, an inmate does not have the right to the treatment of his choice. The record shows that he was seen numerous times, and referred to a dentist on two occasions over a six month period. While LaFave argues that the dental appointments were untimely, the record shows that the initial delay occurred because he claimed that his mother was going to make the appointment but later changed her mind. In addition, the record demonstrates that he did not adhere to the prescribed medication regime. On various occasions, LaFave failed to get out of bed to obtain his medication in order to prevent infection in his mouth. Although it is apparent that LaFave disagreed with the treatment provided by Clinton, the record does not show that the defendant was deliberately indifferent to his serious medical needs. Accordingly, this court recommends that the defendant's motion for summary judgment should be granted.

**\*6** WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that the defendant's motion for summary judgment (Dkt. No. 5) be GRANTED in favor of the defendant in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2002.
Lafave v. Clinton County
Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C**   Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

### I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. Id. at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. Id. at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. Id. at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. Id. at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Id. at ¶¶ 22, 27-28.

### II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir.1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

### III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); Rhodes v. Chapman, 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. Farmer, 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware that* there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jamal KEARSEY, Plaintiff,
v.
Adeyemi WILLIAMS, Defendant.
**No. 99 Civ. 8646 DAB.**

Sept. 1, 2005.

*MEMORANDUM & ORDER*

BATTS, J.

**\*1** Plaintiff Jamal Kearsey, proceeding *pro se,* has filed the above-captioned case against Defendant Dr. Adeyemi Williams ("Dr.Williams") pursuant to 42 U.S.C. § 1983 alleging that Dr. Williams violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs. Defendant has moved to dismiss the Complaint for failure to exhaust administrative remedies, for failure to state a claim, and because Defendant is shielded by qualified immunity.[FN1] For the reasons stated herein, Defendant's Motion to Dismiss is DENIED.

> FN1. This Court granted Defendant's Motion to Dismiss for failure to exhaust administrative remedies in its June 6, 2002 Order but vacated that Order on September 20, 2004 upon Plaintiff's motion pursuant to Fed.R.Civ.P. 60(b). *See Kearsey v. Williams,* No. 99 Civ. 8646, 2004 WL 2093548 (S.D.N.Y. Sept. 20, 2004).

I. BACKGROUND

In his Complaint, Plaintiff alleges that while he was incarcerated at Rikers Island Correctional Facility ("Rikers"), Defendant, a doctor at Rikers, violated Plaintiff's Eighth Amendment rights by refusing to provide him with an asthma pump when Plaintiff experienced breathing difficulties. Specifically, on April 4, 1999, Plaintiff requested to speak with a doctor because the heat in his cell was aggravating his asthma. (Compl. at 3-4.) When Dr. Williams went to Plaintiff's cell, Plaintiff stated that his chest had "tighten[ed] up" and that he "couldn't breath[e]," and requested that Dr. Williams take him "downstairs" to get an asthma pump. (Id. at 4.) Dr. Williams declined to take Plaintiff downstairs but said that he would send a pump to Plaintiff's cell that evening. (Id.) After a period of time, a corrections officer called Dr. Williams and he also informed him of Plaintiff's medical condition. (Id.) Dr. Williams told the officer that he would bring the asthma pump. (Id.) Plaintiff alleges that Dr. Williams forgot to bring the pump. (Id.)

Plaintiff complained for a third time to Dr. Williams of his inability to breathe and stated that he was experiencing chest pain. (Id.) Once again, Dr. Williams responded by promising to send an asthma pump that evening. (Id.) Plaintiff subsequently asked for Defendant's name, to which Dr. Williams allegedly responded, "I won't send you anything now!" (Id.) Dr. Williams then handed Plaintiff a note with his name. (Id. at 5.) No pump was given to Plaintiff. Shortly after Dr. Williams left, Plaintiff borrowed an asthma pump from a fellow minute, although that pump was different from the one Plaintiff was used to. (Id.) Plaintiff complained of chest pains and breathing difficulties for the rest of the day. (Id.) On April 6, 1999, Plaintiff was having blood work done and spoke with a nurse about his medical condition. (Id.) The nurse ordered an emergency pump that arrived later in the day. (Id.)

On June 24, 1999, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendant exhibited deliberate indifference to his serious medical needs in violation of Plaintiff's Eighth Amendment rights. Defendant has filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to exhaust administrative

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), and, in particular, the exhaustion procedure established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, that Plaintiff failed to state a cause of action for which relief can be granted, and that Defendant is shielded from liability based on the doctrine of qualified immunity. (Def.'s Mem. Law at 1, 3, 20.) On June 6, 2002, this Court issued an Order granting Defendant's Motion to Dismiss on the ground that Plaintiff failed to comply with the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. *Kearsey v. Williams*, No. 99 Civ. 8646, 2002 WL 1268014, at *2 (S.D.N.Y. June 6, 2002).

**\*2** Plaintiff filed a Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[FN2] Plaintiff argued that the Court had erred in holding that he was required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, because those procedures are required only of inmates at state-run facilities, whereas Rikers, as a municipally-run facility, has different grievance procedures. *Kearsey*, No. 99 Civ. 8646, 2004 WL 2093548, at *2 (S.D.N.Y. Sept. 20, 2004). In its September 20, 2004 Order, the Court vacated its dismissal Order, finding Plaintiff was not required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. *Id.* at *4.

FN2. Plaintiff was represented by counsel when he filed the 60(b) Motion.

Because the Court's June 6, 2002 Order did not reach the additional grounds in Defendant's Motion to Dismiss, the remaining motions were *subjudice.* In this Order, the Court considers Defendant's remaining arguments: that Plaintiff has failed to state a cause of action and that Defendant is entitled to qualified immunity.

II. DISCUSSION

A. Rule 12(b)(6) Standard

In a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). "The district court should grant such a motion only if, after viewing [the] plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). A court's review of such a motion is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burnheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). In fact, it may appear to the court that "a recovery is very remote and unlikely but that is not the test." *Branham v. Meachum,* 72 F.3d 626, 628 (2d Cir.1996).

These liberal pleading standards "appl[y] with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *prose."Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). It is well-settled that *prose* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 521 (1972).

B. Eighth Amendment

Defendant moves to dismiss the Complaint on the grounds that Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983.

1. Standard for § 1983 deliberate indifference claim

Section 1983 of Title 42, United States Code, enables a plaintiff to bring a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, a plaintiff bringing a § 1983 action must

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

demonstrate that "the conduct complained of was committed by a person acting under color of state law ... [and that] this conduct deprived a person of rights ... secured by the Constitution or laws of the United States." *Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency,* 77 F.3d 26, 29-30 (2d Cir.1996) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)) (internal quotations omitted). Section 1983 is not in itself "a source of substantive rights," but instead "provides a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)).

**\*3** One such source of federal rights is the Eighth Amendment of the Constitution, which states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In *Estelle v. Gamble,* the Supreme Court held that prison employees' "deliberate indifference [to an inmate's] serious medical needs" violates the inmate's Eighth Amendment rights and is actionable under § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). A plaintiff pursuing a § 1983 claim for deliberate indifference to serious medical needs must meet a two-prong standard by demonstrating a serious medical need (the objective prong) and by showing that the defendant employee possessed the requisite culpable mental state (the subjective prong). See *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

2. Serious medical need

The objective prong of the deliberate indifference standard requires a showing of a "sufficiently serious" medical need. *Hathaway,* 99 F.3d at 553 (internal quotations and citations omitted). While "it is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage," several factors are helpful in determining the seriousness of a medical condition. *Chance,* 143 F.3d at 702-03 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997)).

A serious medical need is generally characterized by "a condition of urgency that may result in degeneration or extreme pain" or "the unnecessary and wanton infliction of pain." *Chance,* 143 F.3d at 702 (citation omitted). Whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment" reflects on the seriousness of the medical need, as does the effect of the condition on the inmate's "daily activities" and the extent to which the condition causes "chronic and substantial pain." *Id.* (citation omitted). The refusal to treat a patient suffering from what ordinarily would not be considered a serious medical condition also raises Eighth Amendment concerns if the condition is easily treatable and degenerative. See *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) (holding that "the refusal to treat an inmate's tooth cavity unless the inmate consents to extraction of another diseased tooth constitutes a violation of the Eighth Amendment"). The constitutional implications of a decision not to treat an inmate's medical condition depend on the specific facts of the case-"a prisoner with a hang-nail has no constitutional right to treatment, but ... prison officials [who] deliberately ignore an infected gash ... might well violate the Eighth Amendment." *Id.* at 137-37 (internal quotations and citations omitted).

**\*4** While the failure to treat an inmate's generalized asthmatic condition may not implicate the Eighth Amendment, "an actual asthma attack, depending on the severity, may be a serious medical condition." *Scott v. DelSignore,* No. 02 Civ. 029F, 2005 WL 425473, at \*9 (W.D.N.Y. Feb. 18, 2005); see also *Patterson v. Lilley,* No. 02 Civ. 6056, 2003 WL 21507345, at \*3-4 (S.D.N.Y. June 30, 2003). Indeed, "it is common knowledge that a respiratory ailment, such as asthma, can be serious and life-threatening." *Whitley v. Westchester County,* No. 97 Civ. 0420, 1997 WL 659100, at \*4 (S.D.N.Y. Oct. 22, 1997). An acute asthma attack is inarguably a "condition of urgency" that may cause "substantial pain" and that "reasonable doctor[s] or patient[s] would find important and worthy of comment or treatment." *Chance,* 143 F.3d at 702 (citation omitted); see *Whitley,* No. 97 Civ. 0420(SS), 1997 WL 659100, at \*4.

Plaintiff has alleged that on three separate occasions, he

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

informed Defendant that he was unable to breathe. (Compl. at 4-5.) He also complained that his chest had "tighten[ed] up," and, later, that he was experiencing "chest pains." (Id.) Plaintiff resorted to using a fellow inmate's inhaler when Defendant refused to provide him with one, which suggests the seriousness of his need. (Id. at 5.) Moreover, by alleging in his Complaint that his asthma "started to act up," Plaintiff describes a time-specific incident more in line with an asthma attack than with a generalized asthmatic condition. (Id. at 4.)

Defendant cites *Reyes v. Corrections Officer Bay,* No. 97 Civ. 6419, 1999 WL 681490 (S.D.N.Y. Sept. 1, 1999), as a case similar to this one where the court found that the plaintiff did not allege a sufficiently serious medical condition. However, unlike the plaintiff in *Reyes,* who went ahead with his scheduled visit with his family after complaining of an asthma attack, Plaintiff continued to complain to officers of his condition. Plaintiff resorted to self-medication, by borrowing an asthma pump from a fellow inmate in order to alleviate his condition. In light of these facts, it can hardly be said that Plaintiff was merely suffering from "discomfort."

Accordingly, the Court finds that in his Complaint, Plaintiff alleges facts that he experienced an asthma attack, serious enough to constitute a sufficiently serious medical need for purposes of an Eighth Amendment claim.

3. Deliberate indifference

To satisfy the subjective prong of the deliberate indifference standard, Plaintiff must prove that the prison official was aware of, and consciously disregarded, the prisoner's medical condition. *Chance,* 143 F.3d at 703; *see also Farmer,* 511 U.S. at 837. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance,* 143 F.3d at 702 (quoting *Farmer,* 511 U.S. at 837). While purposefully refusing to treat a serious medical condition constitutes deliberate indifference, it need not be the official's purpose to harm the inmate; "a state of mind that is the equivalent of criminal recklessness" is sufficient. *Hathaway,* 37 F.3d at 553.

**\*5** A physician's mere negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a § 1983 action. *Estelle,* 429 U.S. at 105-06; *Chance,* 143 F.3d at 703. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106. Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

In the instant case, Plaintiff informed Defendant on a number of occasions that he was unable to breathe and that he was experiencing chest pains. (Compl. at 4.) While Defendant's initial decision not to take Plaintiff downstairs for immediate treatment is the sort of prisoner-physician dispute regarding the particularities of medical care that is outside the scope of the Eighth Amendment, the unmistakable inference to be drawn from Plaintiff's allegation that Defendant refused to provide an asthma pump when Plaintiff asked for Defendant's name is that Defendant withheld medical care as retaliation or punishment for Plaintiff's conduct. (Id.) Because consciously delaying treatment in order to punish or retaliate against an inmate meets the subjective standard for deliberate indifference, the Court finds that the Complaint adequately alleges that Defendant acted with the requisite culpable mental state in refusing to treat Plaintiff's asthma attack.

C. Qualified Immunity

Defendant's final argument for dismissal is that, as a government official, Dr. Williams is entitled to qualified immunity.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

At the outset, the Court notes that while a defendant may assert a qualified immunity defense on a Rule 12(b)(6) motion, "that defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright,* 386 F.3d 432, 434 (2d Cir.2004). This is because "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (internal quotations and citations omitted). The plaintiff thus benefits from all reasonable inferences against the defendant's qualified immunity defense on a Rule 12(b)(6) motion. *Id.*

The defense of qualified immunity protects public officers, including prison physicians, from civil actions related to their conduct while they are acting in an official capacity so long as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003). Such a defense "serves important interests in our political system. It protects government officials from liability they might otherwise incur due to unforeseeable changes in the law governing their conduct." *Sound Aircraft Services, Inc. v. Town of East,* 192 F.3d 329, 334 (2d Cir.1999). Qualified immunity also serves the important public interest of "protecting public officials from the costs associated with the defense of damages action ... [including] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from accepting public positions." *Crawford-El v. Britton,* 523 U.S. 574, 590 at fn. 12 (1998).

**\*6** Qualified immunity shields a defendant from liability "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Englarged Sch. Dist.,* 293 F.3d 246, 250 (2d Cir.2001); *Brosseau v. Haugen,* 125 S.Ct. 596, 599 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); *see*

*alsoHarlow,* 457 U.S. at 818-19.

"[A] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609 (1999); *see also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). Determining the constitutional question first serves two purposes: it spares the defendant of unwarranted demands and liability "customarily imposed upon those defending a long drawn-out lawsuit" and determining the constitutional question first "promotes clarity in the legal standards for official conduct, for the benefit of both the officers and the general public ." *Id.*

If a deprivation of a constitutional right has been alleged, a court must determine whether the constitutional right was clearly established by determining: (1) if the law was defined with reasonable clarity, (2) if the Supreme Court or the law of the Second Circuit affirmed the rule, and (3) whether a reasonable defendant would have understood from existing law that the conduct was lawful. *See Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 634, 640 (1987).

As the Supreme Court made clear in *Saucier,* determining whether the right in question was clearly established requires particularized, case-specific analysis. *Id.* at 201-02. The case-specific nature of the inquiry does not mean that official conduct is protected by qualified immunity whenever "courts had not agreed on one verbal formulation of the controlling standard." *Id* . at 202-03. A "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct" even if courts have not ruled on the constitutionality of the specific act in question, and previously decided cases with comparable but not identical facts influence the clarity of the right in question. *Hope v. Pelzer,* 536 U.S. 730 at 741 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The fundamental question is whether "the state of the law" at

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

the time of the alleged violation gave the defendant "fair warning" that his conduct was unconstitutional. *Id.*

**\*7** Even if the right is clearly established, "defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established protection." *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998). "[R]easonableness is judged against the backdrop of the law at the time of the conduct.... [T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau,* 125 S.Ct. at 599.

In the present matter, the Court has already determined that Plaintiff's allegations, taken as true, indicate that Defendant violated Plaintiff's Eighth Amendment rights by refusing to treat Plaintiff's asthma attack in retaliation for Plaintiff's request for Defendant's name. *See supra* at 10-13.

With regard to whether the right allegedly violated was clearly established at the time of the violation, neither the Supreme Court nor the Second Circuit has held that an asthma attack constitutes a serious medical condition for purposes of a deliberate indifference claim. In considering whether Defendant nonetheless had fair warning of the unconstitutionality of the conduct he is alleged to have engaged in, the Court notes that the Second Circuit has repeatedly held as unlawful denials of treatment that "cause or perpetuate pain" falling short of torture and not resulting in death. *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003). Among the conditions the Second Circuit has deemed serious for Eighth Amendment purposes are a tooth cavity, *Harrison,* 219 F.3d at 137; a degenerative hip condition, *Hathaway,* 99 F.3d 550, 551-52; a painful tissue growth, *Brock,* 315 F.3d at 161; a ruptured Achilles tendon that caused pain and swelling, *Hemmings v. Gorczyk,* 134 F.3d 104, 106-07 (2d Cir.1998); and an eye condition that led to blindness in one eye, *Koehl v. Dalsheim,* 85 F.3d 86, 87 (2d Cir.1996). These various conditions, held to be sufficiently serious, are not life-threatening, although they are painful. An asthma attack, however, can be both painful and fatal. Given the state of the law in the Second Circuit, Defendant had ample warning that the law prohibits a prison doctor from

consciously withholding medical care from an inmate with a painful and potentially fatal medical condition.

The Court finds that at this early stage of litigation, Defendant has not shown that he is entitled to qualified immunity.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED.

Defendant shall file an Answer to the Complaint within thirty (30) days of this Order.

SO ORDERED.

S.D.N.Y.,2005.
Kearsey v. Williams
Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Arvin COLLINS, Plaintiff,
v.
Dale ARTUS, Superintendent, Clinton Correctional
Facility, et al., Defendants.
**No. 9:08-CV-470 (TJM/DEP).**

March 9, 2009.

West KeySummary
**Prisons 310 ☞ 192**

310 Prisons
   **310II Prisoners and Inmates**
      310II(D) Health and Medical Care
         310k191 Particular Conditions and Treatments
            310k192 k. In General. Most Cited Cases

**Sentencing and Punishment 350H ☞ 1546**

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
         350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
An **inmate** failed to demonstrate that he had a serious medical need to support his Eighth Amendment claim of deliberate indifference against a prison nurse. An x-ray taken of the **inmate's** wrist failed to reveal any abnormality in the wrist. A pre-operative examination that revealed the presence of cyst stated that there was no injury to the wrist and surgery would be performed to remove the cyst and have it analyzed. Further, the **inmate's** complaint did not allege that if the wrist was left untreated that it would degenerate and present a substantial risk and the **inmate** only sought sporadic

treatment for his pain. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

Arvin Collins, Stormville, NY, pro se.

Hon. Andrew M. Cuomo, Office of Attorney General, State of New York, Richard Lombardo, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In a Report and Recommendation dated October 31, 2008, Magistrate Judge Peebles recommended that Defendants' motions for dismissal be granted and that Plaintiff's complaint be dismissed with leave to replead. Plaintiff has filed objections to the recommendation.

**II. STANDARD OF REVIEW**

When objections to a magistrate judge's Report and Recommendation are lodged, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

## III. DISCUSSION

Having reviewed the record *de novo* and having considered the issues raised in the objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Peebles for the reasons stated in the October 31, 2008 Report-Recommendation and Order. Therefore, it is hereby

**ORDERED** that Defendants' motions for dismissal [dkt. # 13 & # 26] are **GRANTED** and the action is **DISMISSED in its entirety** with leave to replead. Plaintiff's pending motion for appointment of counsel [dkt. # 32] is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Arvin Collins, a New York State prison **inmate** who is proceeding *pro se* and *in forma pauperis,* has commenced this action pursuant to 42 U.S.C. § 1983 claiming deprivation of his civil rights. In his complaint, plaintiff asserts that he was denied adequate medical treatment for an injury to his right wrist and made to perform prison work functions despite the pain resulting from that condition, all in violation of his right to be free from cruel and unusual punishment as guaranteed under the Eighth Amendment to the United States Constitution. As relief, plaintiff's complaint seeks money damages against each of the three defendants, who are named both individually and in their official capacities.

In response to plaintiff's complaint, defendants have filed two separate motions seeking dismissal of plaintiff's claims for failure to state a cause of action upon which relief may be granted. In their motions, defendants assert that plaintiff cannot establish the existence of a serious medical need of constitutional significance, and that his claims represent little more than disagreement with the course of treatment followed by prison officials, a matter

not actionable under section 1983. Defendants additionally assert their entitlement to qualified immunity from suit, based upon the circumstances presented. Having carefully reviewed plaintiff's complaint together with the attached exhibits, I recommend that defendants' motions be granted, with leave to replead.

I. *BACKGROUND*[FN1]

> FN1. In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964). Portions of the background description which follows have been derived from the exhibits attached to plaintiff's complaint, which may also properly be considered in connection with a dismissal motion. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47-48 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *see also Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

**\*2** Plaintiff is a prison **inmate** entrusted to the care and custody of the New York State Department of Correctional Services (the "DOCS"); at the times relevant to his claims, plaintiff was designated to the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York. *See generally* Complaint (Dkt. No. 1). On July 3, 2007, while working as a porter at the facility, plaintiff claims to have injured his right wrist while lifting a laundry bag at the direction of a member of corrections staff. Complaint (Dkt. No. 1) ¶ 6. Plaintiff's subsequent request that he be allowed to discontinue his work and report to emergency sick call to secure treatment for his wrist was denied, and he was instead advised by defendant Mark Orzech, a corrections officer assigned to the Clinton HBlock, to apply for sick call the following morning.[FN2] *Id.* ¶¶ 6, 7, 22. Plaintiff's wrist was examined on July 31,

Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

2007, at which time no signs of trauma or inflammation were noted; following that exam, Collins was issued an ace bandage for wrist support in order to decrease swelling, and given Ibuprofen for pain. Complaint (Dkt. No. 1) ¶ 8 and Exh. 3.

> FN2. While plaintiff initially listed one of the three defendants in the caption of his complaint as "R. Saat, B-Officer UH Block", in the body of the complaint plaintiff made a handwritten notation reflecting that the defendant's name was actually "R. Orzech". *See* Complaint (Dkt. No. 1) ¶ 4. The court therefore substituted defendant R. Orzech in the place of defendant R. Saat where referenced in plaintiff's complaint, and the docket sheet was adjusted to reflect this substitution. *See* Order Dated May 22, 2008 (Dkt. No. 5) at p. 2 n. 1.

> As a result of efforts to serve that defendant, the court and plaintiff were notified that there is no Corrections Officer R. Orzech assigned to work at Clinton, although there is a corrections officer named Mark Orzech at the facility, and he was assigned to work in the H-Block at the relevant times. *See* Dkt. No. 19. That individual has since acknowledged service of the summons and complaint and joined in an earlier motion, filed on behalf of defendants Elizabeth Blaise and Dale Artus, seeking dismissal of plaintiff's complaint. Dkt. Nos. 23, 26. The court will therefore further order that plaintiff's complaint be considered to have been amended and that defendant Mark Orzech be substituted in the place of defendant R. Orzech wherever that defendant is referenced in the complaint, and the clerk will be directed to reflect this substitution on the docket sheet.

Plaintiff was seen intermittently by various medical personnel at Clinton, including defendant Blaise, following the July 31, 2007 visit to the prison infirmary, complaining of various medical conditions, including on occasion his wrist. *See* Complaint (Dkt. No. 1) ¶¶ 8, 11, 12 and Exhs. 1, 3-10. During many of those visits plaintiff was provided with a soft wrist splint and corresponding

permit for its use, and was offered over-the-counter analgesics for pain.[FN3] *See id.* The notations associated with those visits typically reflect no evidence of swelling, inflammation, or adverse effect on plaintiff's range of motion. *Id.* Exhs. 1, 9-10. An x-ray taken on October 16, 2007 revealed no acute condition, and was characterized by medical personnel at the facility as "normal". *Id.* Exhs. 1, 2, 9-10, and 17.

> FN3. On August 21, 2007, plaintiff was seen complaining of persistent wrist pain and congestion. Complaint (Dkt. No. 1) Exh. 3. On that occasion, plaintiff refused an offer of Ibuprofen. *Id.*

In January of 2008, plaintiff was sent to Alice Hyde Medical Center for an outside evaluation of his wrist condition. Complaint (Dkt. No. 1) Exh. 16. In a report of his examination, consultant Dr. Marco R. Berard noted that plaintiff appeared to have a "right wrist ganglion cyst" which should be surgically removed, adding that while the tumor appeared to be the source of some pain, there was otherwise no cellulitis, redness, skin breakdown, numbness, tingling, or injury associated with the condition. *Id. See also* Complaint (Dkt. No. 1) Exh. 17.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on May 1, 2008. Dkt. No. 1. In his complaint plaintiff has named three defendants, including Dale Artus, the superintendent at Clinton; E. Blaise, a registered nurse employed at the facility; and Corrections Officer Mark Orzech, and asserts that each of the three defendants was deliberately indifferent to his wrist condition. *Id.*

On August 8, 2008, defendants Artus and Blaise moved pursuant to Rule 12( b)( 6) of the Federal Rules of Civil Procedure seeking dismissal of plaintiff's claims for failure to state a cause of action upon which relief may be granted. Dkt. No. 13. In their motion, those two defendants argue that plaintiff's complaint fails to establish either the existence of a serious medical need or their deliberate indifference to any such alleged need, and further assert their entitlement to qualified immunity. *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

A second dismissal motion was filed on behalf of defendant Mark Orzech, following his acknowledgment of service in the case, echoing those arguments. Dkt. No. 26. Plaintiff has since responded in opposition to both motions, Dkt. No. 28, which are now ripe for determination and have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Standard of Review*

*3 A motion to dismiss a complaint, brought pursuant to Rule 12( b) ( 6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson, 127 S.Ct. at 2200 (quoting Twombly, 127 S.Ct. at 1964) (quotations and citations omitted); *cf.* Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. Twombly, 127 S.Ct. at 1969 (observing that the Court's prior decision in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12( b)( 6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. Cooper, 378 U.S. at 546, 84 S.Ct. at 1734; Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); Burke v. Gregory, 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12( b)( 6) is substantial; the question presented by such a motion is not whether the plaintiff is ultimately likely to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " Log On America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995)) (quotations and citations omitted). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12( b)( 6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See* Twombly, 127 S.Ct. at 1969, 1974; *see also* Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir.2007) (quoting Twombly, 127 S. Ct. at 1974) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' "). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.' " In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir.2007) (quoting Twombly, 127 S.Ct. at 1974).

*4 When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. Erickson, 127 S.Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (internal quotations omitted); Davis v. Goord, 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); Donhauser v. Goord, 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.) (citation omitted). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

B. *Plaintiff's Deliberate Indifference Claim*

At the heart of this action are plaintiff's claims that defendant Blaise, a prison nurse, failed to properly treat his wrist condition and that when reviewing a grievance concerning the matter, Superintendent Artus failed to remedy the violation. *See* Complaint (Dkt. No. 1) ¶¶ 21, 23. Plaintiff also maintains that defendant Orzech, a corrections officer, was deliberately indifferent to his medical condition when he required Collins to lift objects as part of his porter responsibilities, and denied a request that he be excused from work to attend emergency sick call. *Id.* ¶ 22. Defendants maintain that these allegations, even accepted as true, fail to support an Eighth Amendment claim. *See* Defendants' Motions (Dkt.Nos.13, 26).

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 103, 104, 97 S.Ct. at 290, 291 (quotations and citations omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle,* 429 U.S. at 103, 97 S.Ct. at 290). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; accordingly, the conditions of an **inmate's** confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citing, *inter alia, Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981)). A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement; the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference." *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)); *Waldo v. Goord,* No. 97-CV1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (citations omitted).

1. *Serious Medical Need*

**\*5** In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, " 'sufficiently serious' ". *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (quoting *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324), *cert. denied sub nom., Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). A medical need is serious for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (citations omitted). A serious medical need can also exist where " 'failure to treat a **prisoner's** condition could result in further significant injury or the unnecessary and wanton infliction of pain' "; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley,* 219 F.3d 132, 136-37 (2d Cir.2000) (quoting, *inter alia, Chance,* 143 F.3d at 702). Relevant factors informing this determination include whether the plaintiff suffers from an injury that a " 'reasonable doctor or patient would find important and worthy of comment or treatment' ", a condition that " 'significantly affects' " a **prisoner's** daily activities, or " 'the existence of chronic and substantial pain.' " *Chance,* 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr.3, 2002) (Sharpe, M.J.) (citation omitted).

Plaintiff's own complaint and supporting exhibits reveal that despite his claim of persistent pain to his right wrist, x-rays taken on October 16, 2007 failed to reveal any abnormality. Complaint (Dkt. No. 1) ¶ 18 and Exhs. 1, 2, 9-10, 17. While it is true that a subsequent pre-operative examination report dated January 4, 2008 reveals the presence of a cyst, it also reflects "[n]o injury" advising that surgery would be performed to remove the lump, characterized as a "soft tissue tumor", and have it forwarded to pathology for analysis. *Id.* Exh. 16. Plaintiff's complaint fails to allege that his condition, if left untreated, could result in substantial risk of degeneration or extreme pain. Indeed, plaintiff's efforts to obtain treatment for his wrist pain over time were sporadic, at best, and included both his rejection of Ibuprofen for pain and an indication in a report of one such medical visit that he was an **inmate** porter and did not wish to have time off from his position based upon his wrist condition. *See*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

Complaint (Dkt. No. 1) Exh. 3.

Under these circumstances, accepting plaintiff's allegations as true, no reasonable factfinder could conclude that his wrist condition presented a "condition of urgency" which could result in either "degeneration" and "extreme pain". *See Green v. Senkowski*, 100 F. App'x 45, 46-47 (2d Cir.2004) (finding that the plaintiff had not established that he suffered from a serious medical condition where he received only mild, over-the-counter pain medication for his sporadic complaints of wrist pain and was never diagnosed with a chronic or severe wrist condition); *Bennett v. Hunter,* No. 9:02-CV-1365, 2006 WL 1174309, at *3 (N.D.N.Y. May 1, 2006) (Scullin, S.J. and Lowe, M.J.) (holding plaintiff's complaints of pain from a pinched nerve in his wrist did not constitute a serious medical need); *see also Miles v. County of Broome,* No. 3:04-CV-1147, 2006 WL 561247, at *1, *7 (N.D.N.Y. March 6, 2006) (McAvoy, S.J.) (finding it "highly dubious that [p]laintiff [could] establish a sufficiently serious medical need" where his medical records indicate there was no swelling or deformity and full range of motion in his wrist, plaintiff was given only over-the-counter medication for his pain, and there was no evidence that his wrist condition was likely to cause death or degeneration). I therefore conclude that plaintiff's complaint fails to allege the existence of a serious medical condition of constitutional proportions.

## 2. *Deliberate Indifference*

**\*6** In their motion, defendants maintain that even if plaintiff's wrist condition were found to rise to a level of constitutional significance, his allegations are nonetheless insufficient to establish their deliberate indifference to that condition.

Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to **inmate** health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979); *Waldo,* 1998 WL 713809, at *2) (same). It should be noted that the Eighth

Amendment does not afford **prisoners** a right to medical treatment of their choosing; the question of what diagnostic techniques and treatments should be administered to an **inmate** is a "classic example of a matter for medical judgment" and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 293; *Chance,* 143 F.3d at 703 (citation omitted); *Rosales v. Coughlin,* 10 F.Supp.2d 261, 264 (W.D.N.Y.1998) (citation omitted).

### a. *Defendant Blaise*

Both plaintiff's complaint and the supporting exhibits, including relevant excerpts from plaintiff's medical records, reveal that his condition was treated by defendant Blaise and others at the facility. Those materials reflect, for example, that plaintiff was seen by defendant Blaise on more than one occasion, and that during those visits she examined the plaintiff's wrist and provided treatment, including through use of a soft splint and over-the-counter pain medications. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 11-12 and Exhs. 1, 3-10. The records also reveal that defendant Blaise was acutely aware of plaintiff's condition, and interested in obtaining proper treatment for it. Indeed, in a note dated November 20, 2007, defendant Blaise reported that the plaintiff had been complaining of wrist pain since July, urging prison medical officials to put him at the top of the list of **inmates** to be seen medically. [FN4] Complaint (Dkt. No. 1) Exhs. 9-10.

> FN4. Defendant Blaise's request appears to have been effective, since plaintiff was seen one week later by a nurse practitioner. Complaint (Dkt. No. 1) Exhs. 9-10.

Despite these facts, plaintiff alleges in wholly **conclusory** fashion that defendant Blaise was negligent and did not "appropriately treat" his injury. *See, e.g.,* Complaint (Dkt. No. 1) ¶¶ 15, 23. It is well-established that a claim that negligence or **medical** malpractice has occurred does not support a **medical** indifference cause of action under 42 U.S.C. § 1983. *Estelle,* 429 U.S. at 105-07, 97 S.Ct. at 292-93; *Chance,* 143 F.3d at 703 (citations omitted); *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.1992), *aff'd,* 970

Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

F.2d 896 (2d Cir.1992), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992). Similarly, a mere disagreement by a prison **inmate** with a course of treatment would not suffice to establish such a cause of action. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 293; *Chance,* 143 F.3d at 703 (citation omitted); *Rosales,* 10 F.Supp.2d at 264 (citation omitted). To the extent that plaintiff may be claiming that as an **inmate** he is entitled to be seen by a physician at his request, that contention does not support a constitutional claim, since there is no such requirement imposed under **Eighth Amendment** jurisprudence. *See Webber v. Hammack,* 973 F.Supp. 116, 123 (N.D.N.Y.1997) (Scullin, J.).

**\*7** A careful review of the record reflects that plaintiff's wrist was in fact treated by prison medical officials, including through use of a wrist splint, the offering of analgesics to ease his pain, an x-ray taken on October 16, 2007, an examination on November 27, 2007 by a nurse practitioner, and a referral to an outside source in January of 2008. I am therefore unable to discern any cognizable deliberate indifference to plaintiff's wrist condition by medical officials at Clinton generally, and in particular on the part of defendant Blaise.

b. *Defendant Artus*

It is well-established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (citations omitted); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted). A supervisory official can, however, be liable in one of several ways, including when he or she 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007) (citation omitted); *see also Richardson,* 347 F.3d at 435 (citation omitted); *Wright,* 21 F.3d at 501 (citation omitted); *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) (citation omitted).

Defendants argue that the role of Sergeant Artus in the relevant events is limited to his having denied plaintiff's grievance regarding his medical treatment, and that such conduct does not suffice to establish his personal involvement in the constitutional violation alleged. In support of their argument, defendants offer *Cancel v. Goord,* No. 00 CIV 2042, 2001 WL 303713, at \*8-9 (S.D.N .Y. Mar. 29, 2001) by analogy. *See* Defendants' Motion (Dkt. No. 13) at p. 9. That case, however, involved supervisory employees who ignored a letter from the **inmate** plaintiff complaining of the condition at issue and requesting an investigation, the court concluding that this fact alone did not establish liability. *See Cancel,* 2001 WL 303713. Notably, the court in *Cancel* observed that the plaintiff's complaint contained no other allegations regarding the supervisory defendants' participation in the violations alleged, "either through direct participation, maintenance of a policy[,] or deliberate disregard for [p]laintiffs' rights." *Id.* at \*9.

The circumstances presented in *Cancel* are materially distinguishable from the present situation. In this instance it could be said that through processing plaintiff's grievance, defendant Artus became aware of an ongoing violation which, by virtue of his position as the Superintendent of Clinton, he was empowered to remedy. I therefore recommend against acceptance of defendants' argument regarding the lack of personal involvement of defendant Artus.

**\*8** This notwithstanding, I nonetheless recommend dismissal of plaintiff's claims against defendant Artus. The Superintendent's involvement in the matters set forth in plaintiff's complaint is limited to the processing of a grievance and the issuance of a response on November 5, 2007. *See* Plaintiff's Complaint (Dkt. No. 1) Exh. 2. By that time, as noted in that defendant's grievance denial, plaintiff had been approved for evaluation by a facility nurse practitioner; an x-ray of his right wrist had been taken; and soft splints, ace bandages, and over-the-counter pain medications had been provided to him. *Id.* Noting that the x-ray revealed no acute problems, defendant Artus denied plaintiff's grievance but encouraged him "to continue his over the counter pain medication and follow up with sick call if pain worsens." *Id.* Since I have already found that neither defendant Blaise nor any other medical

Slip Copy, 2009 WL 606176 (N.D.N.Y.)
(Cite as: 2009 WL 606176 (N.D.N.Y.))

personnel at the facility were deliberately indifferent toward the plaintiff by failing to provide plaintiff necessary treatment for a serious medical condition, it follows that defendant Artus similarly cannot be held accountable for awareness of a constitutional violation without taking measures to remedy it. *See* Tomarkin v. Ward, 534 F.Supp. 1224, 1232-33 (S.D.N.Y.1982).

### 3. *Defendant Orzech*

Plaintiff's allegations against defendant Orzech are slightly different from those against his two co-defendants. Plaintiff maintains that Orzech was deliberately indifferent to his medical condition by forcing him to engage in lifting during the course of his prison employment, despite his injury. [FN5] *See* Complaint (Dkt. No. 1) ¶ 22. Since plaintiff has failed to establish the existence of a serious medical condition it follows that defendant Orzech, like his co-defendants, cannot be held accountable for being deliberately indifferent to that condition.

> FN5. Plaintiff also asserts that Orzech's failed to provide him with appropriate medical treatment. *See, e.g.,* Complaint (Dkt. No. 1) ¶ 22(b). Collins' allegations to that effect, however, are extremely conclusory and non-specific.

Moreover, plaintiff's allegations fail to establish any deliberate indifference on the part of defendant Orzech. Lacking in medical training, Orzech appropriately deferred to medical personnel for treatment of plaintiff's medical condition. Ross, 784 F.Supp. at 46 (citing McEachern v. Civiletti, 502 F.Supp. 532, 534 (N.D.Ill.1980)). Nowhere in plaintiff's complaint or in the supporting records is there any indication that he requested that medical personnel excuse him from working in his porter position, and in fact an entry dated July 31, 2007 reflects that he expressed a desire not to have time off from his porter position, despite his wrist condition. *See* Complaint (Dkt. No. 1) Exh. 3. In light of these circumstances, defendant Orzech was presented with no facts from which he could reasonably conclude that plaintiff suffered from a serious medical condition, nor is there any indication that defendant Orzech demonstrated deliberate indifference to such condition.

### IV. *SUMMARY AND RECOMMENDATION*

Plaintiff's complaint, which asserts a claim of deliberate indifference against individual DOCS workers employed in three separate and distinct positions, is deficient both because it fails to disclose the existence of a medical condition of constitutional significance and because his allegations, even when accepted as true and interpreted in his favor, fail to reflect deliberate indifference to his condition, instead merely representing a disagreement with the course of treatment and his dissatisfaction with not having been seen sooner by a physician. Since plaintiff's complaint fails to state a plausible constitutional claim against any of the three named defendants, it is therefore hereby respectfully

**\*9** RECOMMENDED that defendants' motions for dismissal of plaintiff's claims for failure to state a cause of action upon which relief may be awarded (Dkt. Nos.13, 26) be GRANTED, and that plaintiff's complaint (Dkt. No. 1) be DISMISSED in all respects, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2009.
Collins v. Artus
Slip Copy, 2009 WL 606176 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Brian MOOLENAAR, Plaintiff,
v.
Glen CHAMPAGNE, et al., Defendants.
**No. 9:03-CV-1464 (LEK/DEP).**

Sept. 26, 2006.

Brian Moolenaar, pro se, for Plaintiff.

Hon. Eliot Spitzer, Attorney General, Nancy G. Groenwegen, Esq., of Counsel, Albany, NY, for Defendants.

**DECISION AND ORDER**

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on August 28, 2006, by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S .C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 34). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff Brian Moolenaar, which were filed on September 11, 2006. Objections (Dkt. No. 35).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

ORDERED, that the Report-Recommendation (Dkt. No. 34) is APPROVED and ADOPTED in its ENTIRETY; and it is further

ORDERED, that Defendants' motion for summary judgment (Dkt. No. 30) is GRANTED, and Plaintiff's Complaint is DISMISSED IN ITS ENTIRETY, and it is further

ORDERED, that the Clerk serve a copy of this Order on all parties.

IT IS SO ORDERED.
DAVID E. PEEBLES, U.S. Magistrate Judge.

*REPORT AND RECOMMENDATION*

Plaintiff Brian Moolenaar, a New York State prison **inmate** who has been diagnosed as suffering from degenerative disc disease, has commenced this action pursuant to 42 U.S.C. § 1983 against a physician and nurse administrator employed at the prison facility in which he was housed at the relevant times, alleging deprivation of his civil rights. In his complaint, Moolenaar asserts that the defendants were deliberately indifferent to his serious medical needs by virtue of their failure to assign him to a lower bunk, provide him with a double mattress and bed board, and afford him the treatment which he desired. Plaintiff also maintains that after filing an internal grievance and commencing a federal civil rights action addressing the care received at the facility, defendants unlawfully retaliated against him. Plaintiff's complaint seeks recovery of compensatory damages in the amount of ten million dollars.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

Currently pending before the court is a motion by defendants seeking the entry of summary judgment dismissing plaintiff's claims. In their motion, defendants assert that plaintiff has failed to establish their deliberate indifference to his serious medical needs, as distinct from his disagreement with their prescribed course of treatment, and additionally argue that the record lacks any evidence of retaliatory conduct on the part of the named defendants. [FN1]

> [FN1.] Defendants also seek dismissal of plaintiff's claims on the basis of qualified, good faith immunity. In light of my recommendation on the merits, I have not independently addressed the issue of qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 201-02, 121 S.Ct. 2151, 2156 (2001); *Harhay v. Town of Ellington Bd. of Ed.,* 323 F.3d 206, 211 (2d Cir.2003); *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996)).

Having carefully reviewed the record in light of defendants' arguments I conclude that no reasonable factfinder could find that either of the defendants was deliberately indifferent to plaintiff's serious medical needs, and additionally that there is no evidence of any legally cognizable adverse action taken by either of the named defendants in retaliation for plaintiff having engaged in protected activity. Accordingly, I recommend that defendants' motion be granted, and plaintiff's complaint be dismissed in its entirety.

I. *BACKGROUND*

*2 Plaintiff is a New York State **inmate** entrusted to the custody of the New York State Department of Correctional Services ("DOCS"). At the times relevant to his claims, plaintiff was incarcerated within the Franklin Correctional Facility ("Franklin"), located in Malone, New York.

Shortly before his transfer into Franklin, plaintiff was treated at the Clinton Correctional Facility ("Clinton") for

complaints of lower back pain. Champagne Decl. (Dkt. No. 30) ¶ 8 & Exh. B (plaintiff's ambulatory health record, hereinafter cited as "AHR") at 44-45. X-rays taken of plaintiff's lumbar spine area on October 30, 2002 revealed a mild to moderate disc space narrowing at L4-L5 and L5-S1, resulting in a diagnosis of degenerative disc disease rendered on November 18, 2002. Champagne Decl. (Dkt. No. 30) ¶ 8; AHR at 42-44, 99. At Clinton, plaintiff's back pain was treated through the use of prescription pain relievers, including Flexeril, Ibuprofen and Motrin, and prescribed back exercises.[FN2] AHR at 44.

> [FN2.] In his complaint plaintiff contends that while still at Clinton he was awaiting magnetic resonance imaging ("MRI") testing of his back. *See* Complaint (Dkt. No. 1) at 3. While the record does reflect that plaintiff requested such testing, *see, e.g.,* AHR at 42, there is no indication in plaintiff's health records that an MRI was ever ordered by prison medical personnel. According to defendant Champagne, nothing in plaintiff's medical record indicates the need for an MRI given that with the results of plaintiff's back x-rays, medical personnel were able to diagnose his condition. Champagne Decl. (Dkt. No. 30) ¶ 9.

Plaintiff was transferred into Franklin on November 25, 2002. Champagne Decl. (Dkt. No. 30) ¶ 5; AHR at 42. Upon his arrival at the facility, Moolenaar advised medical personnel that he required saline solution for his contact lenses, new contact lenses, and new orthopedic boots. AHR at 40-41. There is no mention in the initial AHR entry for November 25, 2002 of plaintiff's back problems. Following initial screening of plaintiff's medical history by a facility nurse on November 25, 2002, his records were reviewed, as a matter of routine applicable to all incoming **inmates**, by Dr. Glenn Champagne, a DOCS physician employed at Franklin. Champagne Decl. (Dkt. No. 30) ¶ 5. Dr. Champagne describes the purpose of that review to include ascertaining whether any prescriptions should be written and the level of urgency of any required physical follow-up care. *Id.*

Plaintiff registered for sick call on November 27, 2002, renewing his requests for contact lens solution and new boots and, for the first time since his arrival at Franklin,

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

additionally complaining of ongoing back pain. Champagne Decl. (Dkt. No. 30) ¶ 7; AHR at 40. The record of that visit does not indicate that plaintiff either expressed any physical limitations as a result of his back pain, or requested any special accommodation. *Id.* While at Franklin, plaintiff's back pain was treated in various ways including through continued use of Flexeril, a muscle relaxant, and Ibuprofen, an anti-inflammatory medication, as well as through physical therapy.[FN3] Champagne Decl. (Dkt. No. 30) ¶¶ 13, 21-22.

> FN3. According to his medical records, plaintiff requested and received Flexeril refills on February 18, 2003, March 31, 2003 and June 23, 2003, each time having been provided with a thirty day supply of the prescription drug. Champagne Decl. (Dkt. No. 30) ¶ 21; AHR at 32, 35, 37.

During the initial period following his transfer into Franklin, security staff at the facility assigned Moolenaar to a dormitory where he was able to utilize a lower bunk. Groenwegen Decl. (Dkt. No. 30) Exh. B (Transcript of Moolenaar Deposition, hereinafter cited as "Moolenaar Dep.") at 30. Plaintiff's circumstances changed, however, on December 9, 2002, when he was transferred into a new dormitory where he was required to sleep on an upper bunk. *Id.* at 30-32. After voicing his objection to the upper bunk assignment plaintiff was advised that he would need to obtain a lower bunk permit from the prison medical staff in order to qualify for such an accommodation. *Id.* at 32. Plaintiff's medical records fail to disclose any such request for such a lower bunk permit, however, and during his deposition plaintiff acknowledged that he did not submit one despite having been advised of the procedure for obtaining such a permit. Champagne Decl. (Dkt. No. 30) ¶ 15; Moolenaar Dep. at 31-37; *see also* Moolenaar Dep. at 46.

**\*3** On December 18, 2002, while climbing into his upper bunk, plaintiff experienced back pain, resulting in his falling to the floor. Complaint (Dkt. No. 1) at 2; AHR at 39. During the course of that fall, plaintiff struck his head on a locker, and was knocked unconscious. *Id.* As a result of his injuries plaintiff was taken to the infirmary at Franklin, and later sent to Alice Hyde Medical Center for evaluation. Champagne Decl. (Dkt. No. 30) ¶ 17; AHR at

39. Plaintiff was treated at the Medical Center for pain and released back to the Franklin infirmary, where his condition was monitored for a period of twenty-four hours in light of the pain medication prescribed. Champagne Decl. (Dkt. No. 30) ¶ 17; AHR at 124. Plaintiff was discharged from the infirmary by Dr. Champagne on the next day, following a normal examination during which plaintiff stated that he felt better. Champagne Decl. (Dkt. No. 30) ¶ 18; AHR at 124-25. At that point plaintiff was prescribed a bottom bunk in order to avoid any further falls during his anticipated recovery period, as well as bed boards for use as passive treatment for back pain. *Id.* Plaintiff was also continued on Flexeril and Ibuprofen. *Id.*

Plaintiff was seen and evaluated by Dr. Ibarreta, a physician at Franklin, on April 16, 2003. Champagne Decl. (Dkt. No. 30) ¶ 22; AHR at 34. At that time Dr. Ibarreta ordered the plaintiff undergo physical therapy twice weekly for a period of four weeks. *Id.* Plaintiff attended all eight prescribed sessions, and was discharged from physical therapy following the final session, with no notation of any recommended follow-up.[FN4] Champagne Decl. (Dkt. No. 30) ¶ 23; AHR at 63.

> FN4. In both his complaint and motion opposition papers, plaintiff maintains that he actually attended twelve sessions of physical therapy, with the last three having been administered by a new, substitute provider following the resignation of his initial therapist. *See* Plaintiff's Aff. (Dkt. No. 31) ¶ 27. Plaintiff acknowledges that there is no written evidence to substantiate his claim, and speculates that the records of those last three sessions may have been destroyed to cover up the fact that the substitute therapist recommended additional therapy sessions which were not ordered by medical personnel at Franklin. *Id.* ¶ 28.

Plaintiff presented for medical assistance at a routine follow-up sick call on November 25, 2003, seeking treatment for a skin condition. Champagne Decl. (Dkt. No. 30) ¶ 25; AHR at 24. On that occasion Dr. Champagne, who had not previously treated Moolenaar for the condition, was the duty physician. *Id.* During that visit Dr. Champagne indicated his awareness that plaintiff had filed a federal court action against him alleging the denial of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

proper medical care, and advised Moolenaar that in light of his apparent dissatisfaction with his professional services he did not believe it would be appropriate for him to continue rendering non-emergency care to the plaintiff. *Id.* At that time there were three other physicians available on staff at Franklin to meet plaintiff's non-emergency medical needs. Champagne Decl. (Dkt. No. 30) ¶ 26. At no time during his stay at Franklin, which ended on or about August 4, 2004, was plaintiff denied emergency care by Dr. Champagne, or any non-emergency care by other physicians at Franklin. Champagne Decl. (Dkt. No. 30) ¶ 27; Moolenaar Dep. at 95-96.

In January of 2003, plaintiff filed a grievance complaining of the denial of physical therapy for his back condition. Complaint (Dkt. No. 1) at 6. That grievance was denied at the local level as lacking in merit based upon a finding that the decision of whether to order such therapy was for facility physicians, who up until then had not ordered such treatment. *Id.; see also* Complaint (Dkt. No. 1) Exhs. E, F. That determination was upheld on appeal to the Central Office Review Committee ("CORC") by decision dated January 23, 2003. *Id.* Exh. G.

*4 On January 27, 2003, plaintiff was issued a misbehavior report by Corrections Officer Boyer, alleging plaintiff's use, without permission, of two mattresses. Complaint (Dkt. No. 1) at 7. That misbehavior report led to a disciplinary hearing at which plaintiff was found guilty of lying (Rule 107.20), possessing excess state property (Rule 113.20), and being out of place (Rule 109.10), resulting in a penalty which included a fifteen day loss of privileges and a surcharge of five dollars. Complaint (Dkt. No. 1) at 7-8 & Exhs. H-K.

II. *PROCEDURAL HISTORY*

This action was commenced by the plaintiff in the Southern District of New York, and was transferred to this district on December 10, 2003.[FN5] Dkt. No. 1. As defendants, plaintiff's complaint names Dr. Glenn Champagne and Nurse Administrator N. Smith, both employed by the DOCS and stationed at Franklin. *Id.* Plaintiff's complaint asserts a claim of deliberate indifference to his serious medical needs and, when generously read, could be construed as also alleging a

claim of unlawful retaliation, based principally upon Dr. Champagne's refusal to provide him with non-emergency treatment.

> FN5. A prior action, commenced by the plaintiff in this court addressing the circumstances now presented, *Moolenaar v. Glenn Champagne, et al.,* Civil Action No. 03-CV-374 (FJS/DEP) (N.Y.N.D., filed 2003) was dismissed, without prejudice, on motion by the named defendants pursuant to Rule **12( b)( 6)** of the Federal Rules of Civil Procedure.

Following the joinder of issue by their filing of an answer on May 27, 2004, Dkt. No. 14, and pretrial discovery, which included the taking of plaintiff's deposition, defendants moved on October 31, 2005 seeking the entry of summary judgment dismissing plaintiff's claims. Dkt. No. 30. In their motion, *inter alia,* defendants assert that as a matter of law plaintiff cannot establish their deliberate indifference to his serious medical needs, nor can he establish that they retaliated against him for engaging in protected activity. Defendants also seek dismissal on the basis of qualified immunity. Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 31, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Summary Judgment Standard*

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material," for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing Anderson). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

**\*5** When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

B. *Plaintiff's Deliberate Indifference Claim*

In his complaint, plaintiff asserts that the two named

defendants were deliberately indifferent to his serious medical need based upon their failure to properly diagnose and treat his back condition. Plaintiff's allegations against Nurse Administrator Smith center upon his contention that in light of her position she was duty bound, upon his arrival, to review his medical history and insure that while at Franklin he received proper treatment including, in this instance, permission to occupy a lower bunk. Plaintiff's claims against Dr. Champagne stem from his alleged failure to properly diagnose and treat his back condition, resulting in the December 18, 2002 incident and his experiencing ongoing pain.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an **inmate's** confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement-the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference". *See Leach v. Dufrain,* 103 F.Supp.2d 542, 546 (N.D.N.Y.2000) (Kahn, J.) (citing *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.); *see also, generally, Wilson,* 501 U.S. 294, 111 S.Ct. 2321. Deliberate indifference exists if an official "knows of and disregards an excessive risk to **inmate** health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer); Waldo,* 1998 WL 713809, at *2 (same).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

*6 In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, " 'sufficiently serious' ". *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citing *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324), *cert. denied sub nom., Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108 (1995). A medical need is serious for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir .1998) (citations omitted). A serious medical need can also exist where " 'failure to treat a **prisoner's** condition could result in further significant injury or the unnecessary and wanton infliction of pain' "-since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley,* 219 F.3d 132, 136-37 (2d Cir.2000) (quoting, *inter alia, Chance* ). Relevant factors in making this determination include injury that a " 'reasonable doctor or patient would find important and worthy of comment or treatment' ", a condition that " 'significantly affects' " a **prisoner's** daily activities, or " 'chronic and substantial pain.' " *Chance,* 43 F.3d at 701 (citation omitted).

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to **inmate** health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach,* 103 F.Supp.2d at 546 (citing *Farmer); Waldo,* 1998 WL 713809, at *2 (same).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not alone provide a basis to find a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 201-02; *Chance,* 143 F.3d at 703; *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828 (1992). Diagnostic techniques and treatments are "classic example[s] of matters for medical judgment"; accordingly prison medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to

provide its patients. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 293; *Chance,* 143 F.3d at 703; *Rosales v. Coughlin,* 10 F.Supp.2d 261, 264 (W.D.N.Y.1998).

In their motion, defendants do not challenge plaintiff's assertion that he suffers from a serious medical need of constitutional proportions.[FN6] Defendants do, however, steadfastly deny their deliberate indifference to plaintiff's back condition.

> FN6. In light of plaintiff's allegations regarding ongoing pain associated with his back condition, one could argue that it would be inappropriate for the court to find, as a matter of law, that no reasonable factfinder could conclude his degenerative disc disease condition rises to a level of constitutional significance. *See, e .g., Scott v. Perio,* No. 02-CV-578, 2005 WL 711884, at *2 -*5 (W.D.N.Y. Mar. 25, 2005).

For Nurse Administrator Smith's part, she notes that there is no evidence in the record of her involvement in plaintiff's circumstances. According to defendant Smith, the customary practice at Franklin is that an incoming **inmate's** medical records are reviewed by one of the facility's nurses to assess the **inmate's** condition and current medical needs. Smith Decl. (Dkt. No. 30) ¶ 4. In accordance with that custom, plaintiff's medical records were reviewed on November 25, 2002, the day of his arrival, by Franklin Nurse Donna Lawrence. *Id.; see also* AHR at 41. Following security clearance, plaintiff was seen on that date by Nurse Katherine Caban, for the purpose of seeking his input concerning any physical conditions experienced by him and to explain sick call procedures at the facility. Smith Decl. (Dkt. No. 30) ¶ 5; AHR at 42. In accordance with the routine practice at the facility, plaintiff's medical records were then referred to Dr. Champagne, who reviewed them on November 27, 2002. Smith Decl. (Dkt. No. 30) ¶ 6; Champagne Decl. (Dkt. No. 30) ¶ 5; AHR at 40.

*7 There is no evidence in the record to even remotely suggest that defendant Smith was in any way herself deliberately indifferent to plaintiff's **medical** condition. Instead, plaintiff's claim against her appears to be bottomed upon her supervisory position as Nurse

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

Administrator and his assertion that pursuant to DOCS policy, in that position she had oversight responsibility and should have discerned both his **medical** condition and the need for a **bunk permit**. Since there is no *respondeat superior* liability under section 1983, see *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003), and instead liability for a constitutional deprivation must be based upon personal involvement of the defendant in the allegedly offending conduct, this is an insufficient basis to establish defendant Smith's culpability in connection with the **Eighth Amendment** violation alleged by plaintiff. *Bennett v. Hunter,* No. 9:02-CV-1365, 2006 WL 1174309, at n. 33 (N.D.N.Y. May 1, 2006) (Scullin, S.J. & Lowe, M.J.) (collecting cases).

Plaintiff's claims against defendant Champagne appear to arise principally out of his frustration over the inability of medical staff at Franklin to cure his degenerative disc disease and relieve him from the pain associated with that condition.[FN7] Many of the allegations set forth in plaintiff's complaint are couched in terms of "negligence" and "malpractice". It is well established, however, that neither a claim of malpractice by an **inmate** against a prison physician nor disagreement with a prescribed course of treatment gives rise to a constitutional claim cognizable under section 1983. *Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 201-02; *Chance,* 143 F.3d at 703; *Ross,* 784 F.Supp. at 44. In this instance a careful review of the record, including plaintiff's AHR, fails to reflect any indifference by Dr. Champagne to Moolenaar's symptoms. Instead, the record reveals that plaintiff was provided with medication to relieve his back pain, and that the degenerative disc disease from which he has been diagnosed as suffering is a common, chronic ailment which afflicts many individuals and is subject to the type of treatment, including exercise regimes, pain medication, and physical therapy, which plaintiff was provided while at Franklin.[FN8]

> **FN7.** It does not appear that Dr. Champagne saw the plaintiff for purposes of rendering care and treatment for his back condition until December 19, 2002, after the fall from his top bunk. Champagne Decl. (Dkt. No. 30) ¶ 17.

> **FN8.** Degenerative disc disease is described by Dr. Champagne as a relatively common condition experienced by many adults as a

normal part of the aging process, and capable of producing symptoms of varying degrees. Champagne Decl. (Dkt. No. 30) ¶ 10. According to Dr. Champagne "[m]ost persons can expect to have some level of degeneration as they age." *Id.*

One of plaintiff's complaints concerns a delay in renewing his pain medication prescriptions upon his arrival at Franklin. From his records, it appears that Moolenaar was not provided with pain medication between November 27, 2002, when, according to his records, he complained of back pain for the first time while at Franklin, and December 19, 2002 when he was prescribed Flexeril and Ibuprofin. *See* AHR at 38-39. Such a modest delay in providing pain medication, however, does not rise to a level of constitutional significance.[FN9] *Brown v. Wright,* No. 04 Civ. 0462, 2005 WL 3305015, at *6 -*7 (S.D.N.Y. Dec. 6, 2005) (collecting cases).

> **FN9.** Plaintiff's AHR fails to reflect any complaints to prison officials of back pain between November 27, 2002 and the December 18, 2002 bunk accident. AHR at 39-42.

One of plaintiff's allegations against Dr. Champagne is that his failure to provide Moolenaar with a lower bunk permit between his arrival at Franklin on November 25, 2002 and the date of his accident on December 18, 2002 constitutes deliberate indifference to his medical needs. The record reflects, however, that despite being advised that he could request a lower bunk permit, plaintiff did not do so. *See* Moolenaar Dep. (Dkt. No. 30) at 31-37, 46. At no time prior to December 18, 2002 was Dr. Champagne asked by the plaintiff to provide him with a such a permit, nor is there any indication in the record that Dr. Champagne was aware of any such request or preference. *Id.* Since the record is devoid of any evidence from which a reasonable factfinder would conclude Dr. Champagne knew or reasonably should have known that plaintiff's medical condition warranted the issuance of such a lower bunk permit, and plaintiff's other allegations against Dr. Champagne amount to nothing more than a disagreement with the course of treatment and frustration over experiencing ongoing back pain, I recommend dismissal of plaintiff's medical indifference claims against that defendant as a matter of law.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

C. *Retaliation Claim*

**\*8** Generously construed, plaintiff's complaint could be viewed as alleging retaliation on the part of the defendants for his having engaged in protected activity, including the filing of a grievance and commencement of suit against Dr. Champagne.[FN10] Defendants maintain that any such retaliation claim is lacking in merit.

> FN10. It is well established, and defendants do not argue otherwise, that such conduct by a prison **inmate** is protected activity subject to protection under the First Amendment. *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996).

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action-in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001).* If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct ." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham,* 89 F.3d at 79 (citations omitted).

Much of the retaliatory conduct complained of in plaintiff's complaint involves actions taken by DOCS employees other than the two defendants named in this action. The record, including plaintiff's complaint and his response in opposition to the motion papers, is wholly devoid of any evidence which would link the defendants to that activity or inculpate them in orchestrating or arranging for it. Under these circumstances, personal involvement in a retaliation claim being a requirement of such a cause of action, *see, e.g., Salahuddin v. Mead,* No.

95 Civ. 8581, 2002 WL 1968329, at n. 3 (S.D.N.Y. Aug. 26, 2002), I recommend rejection of those portions of plaintiff's retaliation claim based upon conduct, including issuance of a misbehavior report, taken by other prison officials.

A portion of plaintiff's retaliation claim against Dr. Champagne appears to be based upon his admitted refusal in November 25, 2003 to treat Moolenaar on a non-emergency basis in light of plaintiff's prior suit against him complaining of the adequacy of his care and seeking ten million dollars in damages.[FN11] *See* Complaint (Dkt. No. 1) at 12; *see also* Champagne Decl. (Dkt. No. 30) ¶ 25. To establish a claim of retaliation, however, as was previously noted, plaintiff must establish that he or she suffered an adverse action taken out of retaliatory animus. *See Thaddeus-X v. Blatter,* 175 F.3d 378, 398 (6th Cir.1999). In this case, plaintiff did not suffer any significant adverse action consequences. While, given plaintiff's dissatisfaction with his services, Dr. Champagne did understandably decline to provide non-emergency care and treatment for the plaintiff, he nonetheless indicated a willingness to respond to any emergencies, and additionally pointed out to the plaintiff that there were three other physicians available to attend to his non-emergency medical needs. Under these circumstances plaintiff did not suffer any adverse action as a result of Dr. Champagne's decision not to treat him and thus, as a matter of law, cannot sustain a retaliation claim based upon that refusal.

> FN11. Plaintiff's complaint alleges that on June 24, 2003 he was seen by Dr. Kim who advised him that there was nothing wrong with his back and he was discharged to return to work. Complaint (Dkt. No. 1) at 9-10. Those allegations do not draw support from plaintiff's AHR, which reflects that on June 23, 2003 he was seen at the facility reporting sharp back pains and was provided with Flexeril and Ibuprofen. AHR at 32. The following day, on June 24, 2003, plaintiff was again seen by a professional at the medical facility and was provided with additional dosages of Flexeril and Ibuprofen. AHR at 31.

IV. *SUMMARY AND RECOMMENDATION*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)
(Cite as: 2006 WL 2795339 (N.D.N.Y.))

**\*9** Plaintiff, who like many aging individuals suffers from degenerative disc disease, has commenced this action expressing understandable frustration at the inability of prison officials to cure his diagnosed condition. Plaintiff's complaint, however, is replete with references to negligence and medical malpractice, and primarily evidences his disagreement with the prescribed treatment received from prison officials. The record now before the court fails to reflect any evidence of deliberate indifference by defendants Champagne and Smith to plaintiff's serious medical needs, instead revealing that his back condition was properly diagnosed and addressed through the administering of pain medication, prescribed exercises, and receipt of physical therapy. I therefore recommend dismissal of plaintiff's deliberate indifference claims.

Plaintiff's complaint also asserts a cause of action for retaliation. The actions allegedly taken against him which form the basis of that retaliation claim principally relate to conduct of corrections officials who are not defendants in this action. Inasmuch as the record is lacking in evidence implicating the named defendants in connection with those actions, this portion of the retaliation claim is subject to dismissal. Lastly, while plaintiff also asserts that Dr. Champagne's refusal to treat him in light of his having engaged in the protected activity of suing him was unlawful, that conduct did not adversely affect the plaintiff since three other prison doctors at Franklin were available to address plaintiff's non-emergency care, and Dr. Champagne indicated that he would not refuse to provide emergency services to the plaintiff.

Based upon the foregoing is it hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 30) be GRANTED, and plaintiff's complaint DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within ten (10) days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28

U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roland v. Racette,* 984 F.2d 85 (2d Cir.1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

N.D.N.Y.,2006.
Moolenaar v. Champagne
Not Reported in F.Supp.2d, 2006 WL 2795339 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

1995 U.S. Dist. LEXIS 7136, *



LEXSEE 1995 US DIST LEXIS 7136

**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants. [1]**

1   Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided**
**May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P. 4(k)*. Defendants were not subject to federal interpleader

jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and

1995 U.S. Dist. LEXIS 7136, *

non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

## LexisNexis(R) Headnotes

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of*

*Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

1995 U.S. Dist. LEXIS 7136, *

Overview
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy
[HN7] 28 U.S.C.S. § 1367(a) requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.


Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview
Civil Procedure > Venue > Multiparty Litigation
[HN8] See 28 U.S.C.S. § 1391(a).


Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview
Civil Procedure > Venue > Multiparty Litigation
[HN9] See 28 U.S.C.S. § 1391(1).


Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers
Civil Procedure > Venue > Individual Defendants
Civil Procedure > Venue > Multiparty Litigation
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. 28 U.S.C.S. § 1406(a).


Civil Procedure > Venue > Motions to Transfer > General Overview
Civil Procedure > Judicial Officers > Judges > Discretion
Governments > Legislation > Statutes of Limitations > General Overview
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.


Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a Fed. R. Civ. P. 12(b)(6) issue.


Civil Procedure > Pleading & Practice > Defenses,

Demurrers & Objections > Failures to State Claims
Civil Rights Law > General Overview
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.


Civil Procedure > Parties > Self-Representation > Pleading Standards
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.


Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims
Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview
Civil Procedure > Parties > Self-Representation > Pleading Standards
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.


Civil Procedure > Parties > Self-Representation > General Overview
Civil Procedure > Counsel > Appointments
Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under 28 U.S.C.S. § 1915(d) to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

COUNSEL: [*1] HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ.,

1995 U.S. Dist. LEXIS 7136, *

MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

***MEMORANDUM-DECISION AND ORDER***

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines

on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8] The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman

also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's

dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P. 4(e)(1)*. [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1)* and *4(e)(1)*. [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks

jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

**A. Personal Jurisdiction**

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k)*. *See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

**B. Subject Matter Jurisdiction**

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman*, argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a)*. *Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is

an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. § 1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332*. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are

entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> [HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a)*. *Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

> [HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir.*

*1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

7       J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25] of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27]

1995 U.S. Dist. LEXIS 7136, *

amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989))*. We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6)*.

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint under *28 U.S.C. § 1915(d)*, holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989)*. The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8*. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993)*, *aff'd 41 F.3d 1500 (2d Cir. 1994)*; *cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540*.

**IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions**

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991)*. Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695*.

**CONCLUSION**

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE